# United States Court of Appeals
## For the First Circuit

No. 20-1593

CARLOS MONTEIRO SILVA,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

Kerry E. Doyle, with whom Graves and Doyle was on brief, for petitioner.

Evan P. Schultz, Trial Attorney, Office of Immigration Litigation, Civil Division, with whom Brian Boynton, Acting Assistant Attorney General, Civil Division, and Stephen J. Flynn, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

February 28, 2022

**LYNCH, Circuit Judge.** Petitioner Carlos Monteiro Silva seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA") in May 2020. The BIA dismissed Silva's appeal of a decision by the immigration judge ("IJ") holding that Silva was removeable under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for having committed an "aggravated felony" as defined under 8 U.S.C. § 1101(a)(43). The IJ determined and the BIA affirmed that Silva's Massachusetts state conviction for accessory after the fact to the crime of murder was categorically an aggravated felony for purposes of the INA because it met the definition of "an offense relating to obstruction of justice." Id. § 1101(a)(43)(S). The IJ and BIA held that Silva was ineligible for withholding of removal because he had committed a particularly serious crime and had not met his burden to establish that he was eligible for asylum or relief under the Convention Against Torture ("CAT").

Silva argues that the IJ and the BIA erred by applying the categorical approach to determine that his state conviction for accessory after the fact was "an offense relating to obstruction of justice." Id. He argues that the BIA's interpretation of "an offense relating to obstruction of justice" as including offenses where an investigation or proceeding is only "reasonably foreseeable" is an unreasonable interpretation of § 1101(a)(43)(S) and that the INA unambiguously requires that an

obstruction of justice offense have some nexus to a pending or ongoing investigation or judicial proceeding, which the Massachusetts accessory-after-the-fact statute does not require. For this and other reasons, Silva argues that deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), does not apply to the BIA's interpretation and that Silva's conviction for accessory after the fact is not categorically an obstruction of justice offense triggering the INA's aggravated felony grounds for removal.[1]

We make two holdings, each of which provides a basis for denying the petition. First, we follow the mode of analysis employed by the Supreme Court in Esquivel-Quintana v. Sessions, 137 S. Ct. 1562 (2017), and so apply "the normal tools of statutory interpretation," id. at 1569. We hold the generic federal definition of "an offense relating to obstruction of justice" unambiguously does not require a nexus to a pending or ongoing investigation or judicial proceeding. Alternatively, we also hold, employing Chevron analysis, that the BIA's interpretation must be sustained. Consonant with these holdings, we conclude that the IJ and BIA properly concluded that Silva's Massachusetts conviction for accessory after the fact is categorically an offense relating to obstruction of justice and so rendered him removable

---

[1] We acknowledge and thank amici curiae for their brief in support of the petitioner.

- 3 -

as an aggravated felon.  We deny Silva's petition using each mode of analysis.

## I.

### A.  <u>Massachusetts State Conviction</u>

Silva is a native and citizen of Cape Verde who was admitted to the United States in 1989 as a lawful permanent resident.

In September 2017, Silva pleaded guilty in Massachusetts to accessory after the fact in violation of Mass. Gen. Laws ch. 274, § 4.  That statute provides that,

> [w]hoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon or accessory before the fact, or gives such offender any other aid, knowing that he has committed a felony or has been accessory thereto before the fact, with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact.

Id.  The offense to which Silva pleaded guilty occurred in 2003. The September 2003 indictment that described the offense stated that three men, not including Silva, "on April 28, 2003, did assault and beat [the victim] with intent to murder him and by such assault did kill and murder [the victim]."  As to Silva, the indictment charged that he, "well knowing . . . the [three men] to have committed the felony . . . [,] did harbor, conceal, maintain, assist or give any other aid to the said [three men], with intent that the said [three men] should avoid and escape

- 4 -

detention, arrest, trial and punishment" by driving those three men away from the scene of the murder.[2]  Silva was sentenced to between four and five years in Massachusetts state prison.

## B.    Removal Proceedings and BIA Decision

In January 2018, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against Silva.[3]  In March 2019, DHS amended the charges of removal against Silva. Those amended charges stated that Silva was removable for, among other things, having been convicted of an aggravated felony in the form of "an offense relating to obstruction of justice . . . for which the term of imprisonment was at least one year."  See 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(S).[4]  Silva objected to those amended charges of removal.

---

[2]    Silva's plea leaves no doubt that he intended to obstruct a reasonably foreseeable investigation.  To the extent our dissenting colleague argues to the contrary, the state court conviction precludes such a holding.

[3]    This case has a long procedural history involving an initial termination of removal proceedings against Silva and a reinstatement of proceedings against him on different charges of removal.  We describe only those later proceedings which led to this appeal.

[4]    The amended charges also stated that Silva was removeable for having been convicted of two or more crimes involving moral turpitude. See 8 U.S.C. § 1227(a)(2)(A)(ii).  That charge of removal was based on Silva's Massachusetts accessory-after-the-fact conviction and an earlier Massachusetts state conviction for receiving stolen property in violation of Mass. Gen. Laws ch. 266, § 60.  The IJ and the BIA ultimately did not rely on this alternative ground for removal because of updated criminal documents filed with the IJ by Silva reflecting that a Massachusetts state court had allowed his motion to vacate his

In a written decision in May 2019, the IJ held that Silva's Massachusetts accessory-after-the-fact conviction was categorically an offense relating to obstruction of justice under the INA and so was a proper ground for removal as an aggravated felony.[5]  The IJ relied on the BIA's decision in Matter of Valenzuela Gallardo, 27 I. & N. Dec. 449, 452-60 (B.I.A. 2018), underlying removal order vacated in Valenzuela-Gallardo v. Barr, 968 F.3d 1053 (9th Cir. 2020).[6]

---

plea for several prior convictions, including his conviction for receiving stolen property.  They declined to decide what effect, if any, that state court decision would have on Silva's removal proceedings.  The only issue for our review is the IJ's and the BIA's determination about the aggravated felony charge for removal.

    [5]    "[T]o determine whether an alien's conviction qualifies as an aggravated felony under th[e INA], [courts and the agency] 'employ a categorical approach by looking to the statute . . . of conviction, rather than to the specific facts underlying the crime.'"  Esquivel-Quintana, 137 S. Ct. at 1567-68 (ellipsis in original) (quoting Kawashima v. Holder, 565 U.S. 478, 483 (2012)); see also De Lima v. Sessions, 867 F.3d 260, 262-63 (1st Cir. 2017).  "Under that approach, we ask whether 'the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony.'"  Esquivel-Quintana, 137 S. Ct. at 1568 (some internal quotation marks omitted) (quoting Moncrieffe v. Holder, 569 U.S. 184, 190 (2013)); see also De Lima, 867 F.3d at 262-63.  "[W]e presume that the state conviction 'rested upon . . . the least of th[e] acts' criminalized by the statute, and then we determine whether that conduct would fall within the [generic] federal definition of the crime."  Esquivel-Quintana, 137 S. Ct. at 1568 (second and third alterations in original) (quoting Johnson v. United States, 559 U.S. 133, 137 (2010)); see also De Lima, 867 F.3d at 263.

    [6]    Valenzuela Gallardo, applying the categorical approach, held that the generic definition of obstruction of justice includes

- 6 -

Silva then filed applications for asylum, withholding of removal, and protection under the CAT. In a written decision in December 2019, the IJ denied all three forms of relief from removal. The IJ concluded that Silva's aggravated felony conviction for accessory after the fact rendered him statutorily ineligible for asylum, see 8 U.S.C. § 1158(b)(2)(A)(ii), (b)(2)(B)(i), and that the conviction was a "particularly serious crime" which barred his application for withholding of removal, see id. § 1231(b)(3)(B)(ii). The IJ also concluded that Silva did not provide sufficient evidence to support his application for CAT protection.

Silva appealed to the BIA. In May 2020, the BIA denied that appeal. The BIA, referencing Matter of Valenzuela Gallardo, adopted and affirmed the IJ's decision, holding that Silva's Massachusetts accessory-after-the-fact conviction was categorically an aggravated felony relating to obstruction of justice. The BIA also held that the IJ did not clearly err in finding that Silva's Massachusetts accessory-after-the-fact

---

crimes involving: "(1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere with an investigation or proceeding that is ongoing, pending, or 'reasonably foreseeable by the defendant.'" 27 I. & N. Dec. at 456 (emphasis added) (quoting Marinello v. United States, 138 S. Ct. 1101, 1110 (2018)) (citing United States v. Aguilar, 515 U.S. 593, 599 (1995)). Applying that generic federal definition of obstruction of justice, the IJ concluded that the elements of Silva's Massachusetts accessory-after-the-fact conviction were a categorical match.

conviction was a particularly serious crime for purposes of withholding of removal, and affirmed the denial of all forms of relief.

This timely petition for review followed.

## II.

Silva first argues that the Court should give no deference to the BIA's interpretation in Matter of Valenzuela Gallardo of "an offense relating to obstruction of justice" for various reasons. He also argues that, even if his Massachusetts accessory-after-the-fact conviction is an aggravated felony relating to obstruction of justice, the BIA erred in determining that the conviction is a "particularly serious crime" for purposes of barring him from withholding of removal.[7]

Where, as here, "the BIA adopts and affirms an IJ's decision, we review the IJ's decision 'to the extent of the adoption, and the BIA's decision as to [any] additional ground.'" Sunoto v. Gonzales, 504 F.3d 56, 59-60 (1st Cir. 2007) (alteration in original) (quoting Berrio-Barrera v. Gonzales, 460 F.3d 163, 167 (1st Cir. 2006)). We review de novo the BIA's legal

---

[7] Silva does not challenge the IJ's and BIA's determination that his conviction for accessory after the fact, if found to be an aggravated felony, would render him statutorily ineligible for asylum. Nor does he challenge the IJ's and BIA's denial of his application for deferral of removal under the CAT. Any challenge to those two determinations has been waived. See Bekele v. Lyft, Inc., 918 F.3d 181, 186 (1st Cir. 2019).

- 8 -

conclusions, including its determination that Silva's Massachusetts accessory-after-the-fact conviction is an aggravated felony. See Lecky v. Holder, 723 F.3d 1, 4 (1st Cir. 2013). We review the BIA's factual findings under a deferential standard, upholding them "as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Sanabria Morales v. Barr, 967 F.3d 15, 19 (1st Cir. 2020) (quoting Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014)).

A.   **Applying the Tools of Statutory Interpretation as Applied by the Supreme Court in Esquivel-Quintana, the Conviction for Accessory After the Fact Is an Aggravated Felony "Relating to Obstruction of Justice" Under the INA**

We turn first to Silva's argument that his Massachusetts accessory-after-the-fact conviction is not categorically "an offense relating to obstruction of justice" because, he alleges, it does not require a nexus to a pending or ongoing investigation or judicial proceeding. In Esquivel-Quintana, the Supreme Court addressed a similar issue of whether the petitioner's state conviction for unlawful sexual intercourse with a minor was categorically an offense for "sexual abuse of a minor" under 8 U.S.C. § 1101(a)(43)(A). 137 S. Ct. at 1567. Applying "the normal tools of statutory interpretation," id. at 1569, the Court held that "in the context of statutory rape offenses that criminalize sexual intercourse based solely on the age of the participants, the generic federal definition of sexual abuse of a minor requires

- 9 -

that the victim be younger than 16," id. at 1568. It held that "[b]ecause the California statute at issue in this case does not categorically fall within that definition, a conviction pursuant to it is not an aggravated felony under § 1101(a)(43)(A)." Id.[8] The Court determined the meaning of the statutory definition based on the text, the structure of the statute and closely related federal statutes, the consensus of state criminal statutes, and definitions from other sources, like the Model Penal Code. Id. at 1569-72. Because it determined the unambiguous meaning of the statute, the Court held it was unnecessary to consider the Chevron and rule of lenity issues. Id. at 1572.

We initially, as we said, follow the same analytical path as the Supreme Court in Esquivel-Quintana and consider the same factors to determine the generic federal definition of "an offense relating to obstruction of justice."

---

[8]    In Esquivel-Quintana, the petitioner had been convicted under a California statute criminalizing "unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator" in which the statute defined "minor" as "a person under the age of 18 years." 137 S. Ct. at 1567 (quoting Cal. Penal Code § 261.5(a), (c)). The petitioner was convicted under that statute for having had "consensual sexual intercourse . . . [with] a 17-year-old" when he was 21. Id.

- 10 -

1. **The Text of the Statute as a Whole Shows That the Generic Federal Definition of "An Offense Relating to Obstruction of Justice" Must Be Construed to Include Accessory After the Fact**

We begin with the text of the INA. See id. at 1568-69; United States v. De la Cruz, 998 F.3d 508, 513 (1st Cir. 2021). "[W]e accord the statutory text its ordinary meaning by reference to the specific context in which that language is used, and the broader context of the statute as a whole." De la Cruz, 998 F.3d at 513 (internal quotation marks omitted) (quoting Recovery Grp., Inc. v. Comm'r, 652 F.3d 122, 125 (1st Cir. 2011)). When resolving a dispute over the meaning of a statute, we "normally seek[] to afford the law's terms their ordinary meaning at the time Congress adopted them." Id. at 515 (quoting Niz-Chavez v. Garland, 141 S. Ct. 1474, 1480 (2021)); see also Esquivel-Quintana, 137 S. Ct. at 1569-72 (interpreting 8 U.S.C. § 1101(a)(43)(A) according to what its ordinary meaning was in 1996 when Congress added that provision to the INA).

a. **The Text of § 1101(a)(43)(S) Supports That Accessory After the Fact Is "An Offense Relating to Obstruction of Justice"**

Section 1101(a)(43)(S), which provides that "an offense relating to obstruction of justice" is an aggravated felony, was added to the INA in 1996. See Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 440(e)(8), 110 Stat. 1214, 1278; Illegal Immigration Reform and Immigrant

- 11 -

Responsibility Act of 1996, Pub. L. No. 104-208, § 321(a)(11), 110 Stat. 3009, 3009-628. The INA does not define "obstruction of justice." So we turn to reliable contemporaneous dictionaries to determine that term's ordinary meaning. See Esquivel-Quintana, 137 S. Ct. at 1569-70; De la Cruz, 998 F.3d at 515.

Black's Law Dictionary defined "obstructing justice" as "[i]mpeding or obstructing those who seek justice in a court, or those who have duties or powers of administering justice therein," "attempt[ing] to prevent, or . . . prevent[ing], the execution of lawful process," or "obstructing the administration of justice in any way -- as by hindering witnesses from appearing, assaulting process servers, influencing jurors, obstructing court orders or criminal investigations." Obstructing Justice, Black's Law Dictionary 1077 (6th ed. 1990). Another dictionary at that time defined "obstruction of justice" as "the crime or act of willfully interfering with the process of justice and law esp. by influencing, threatening, harming, or impeding a witness, potential witness, juror, or judicial officer or legal officer or by furnishing false information in or otherwise impeding an investigation or legal process." Obstruction of Justice, Merriam-Webster's Dictionary of Law 337 (1996).

Indeed, Bryan Garner, a noted legal commentator often cited by the Supreme Court, see, e.g., Esquivel-Quintana, 137 S. Ct. at 1569; Van Buren v. United States, 141 S. Ct. 1648, 1657

(2021); <u>Bostock</u> v. <u>Clayton Cnty.</u>, 140 S. Ct. 1731, 1749 (2020); <u>Lockhart</u> v. <u>United States</u>, 577 U.S. 347, 351 (2016), defined "obstruction of justice" as "interference with the orderly administration of law" and stated that it was "a broad phrase that captures every willful act of corruption, intimidation, or force that tends somehow to impair the machinery of the civil or criminal law," Obstruction of Justice, B. Garner, <u>A Dictionary of Modern Legal Usage</u> 611 (2d ed. 1995).  These definitions did not explicitly require that the obstructive conduct be committed in relation to a pending or ongoing investigation or judicial proceeding.  Acting as an accessory to a crime after the fact by providing some sort of aid to the principal with the intent that the principal evade capture, trial, or punishment, even if there is not then a pending or ongoing investigation or proceeding, certainly fits within these definitions of "obstruction of justice."

Furthermore, the relevant statutory term to be interpreted is not just "obstruction of justice"; rather, it is "an offense <u>relating to</u> obstruction of justice."  8 U.S.C. § 1101(a)(43)(S) (emphasis added).  The Supreme Court has stated in other contexts that the ordinary meaning of the phrase "relating to" is "a broad one," holding that it normally means "connection with or reference to" something else.  <u>Morales</u> v. <u>Trans World</u>

- 13 -

Airlines, Inc., 504 U.S. 374, 383-84 (1992).[9]  The generic federal definition of § 1101(a)(43)(S) must necessarily encompass more than the definition of "obstruction of justice" itself, including offenses connected with or in reference to that concept.  Indeed, we "must give effect, if possible, to every clause and word of a statute."  Loughrin v. United States, 573 U.S. 351, 358 (2014) (quoting Williams v. Taylor, 529 U.S. 362, 404 (2000)).  To limit the scope of § 1101(a)(43)(S) to only the narrowest possible reading of obstruction of justice would violate that core tenet of statutory interpretation.  Accordingly, even if we read the dictionary detentions more narrowly, we would still conclude that Congress intended to cover offenses like Massachusetts accessory-after-the-fact.

---

[9]    Silva relies on the Supreme Court's decision in Mellouli v. Lynch, 575 U.S. 798 (2015), for the proposition that the "relating to" language in § 1101(a)(43)(S) must be given a more restrictive reading.  Mellouli is distinguishable.  There, the Supreme Court concluded that the "relating to" language in a different provision of the INA had to be given a narrower reading within the context of the statute because that provision included a cross-reference to another specific statute further defining the statute of conviction for purposes of removal.  See id. at 801-02, 808-12, 808 n.9.  Here, there is no cross-reference to another statute which defines "obstruction of justice" or requires a nexus to a pending or ongoing investigation or judicial proceeding.

**b.** **The Text and Structure of Surrounding Provisions of the INA Support That Accessory After the Fact Is "An Offense Relating to Obstruction of Justice"**

In addition to the text of the specific provision at issue, we also consider the text and structure of the INA as a whole. See Esquivel-Quintana, 137 S. Ct. at 1571 (considering the INA's disparate use of cross-references to other statutes in interpreting a particular provision). Most of the offenses listed as "aggravated felon[ies]" under § 1101(a)(43) specifically include cross-references to other federal statutes which define those offenses, while no such cross-reference is included to define "an offense relating to obstruction of justice." Compare 8 U.S.C. § 1101(a)(43)(B)-(F), (H)-(J), (K)(ii)-(iii), (L), (M)(ii), (N)-(P) (all containing cross-references to other statutes), with id. § 1101(a)(43)(S) (containing none). See also id. § 1101(a)(43)(A), (G), (K)(i), (M)(i), (Q)-(R), (T) (also containing no cross-references to other statutes). Moreover, § 1101(a)(43)(S) is among only a few of the aggravated felonies under the INA in which Congress deliberately used the expansive qualifier "relating to" to describe the aggravated felony. Compare 8 U.S.C. § 1101(a)(43)(B)-(F), (H)-(J), (K)(ii)-(iii), (L), (M)(ii), (N)-(P) (all using instead something like "defined in" or "described in" followed by a cross-reference to another statute defining the offense), with id. § 1101(a)(43)(S). See also id.

- 15 -

§ 1101(a)(43)(K)(i), (Q)-(R), (T) (using "relates to" or "relating to" without a cross-reference to another statute).

Congress easily could have included cross-references in § 1101(a)(43)(S) to other statutes to define "an offense relating to obstruction of justice," but it chose not to do so. This shows that Congress did not intend for "an offense relating to obstruction of justice" to be read restrictively to apply only to offenses defined by specific federal obstruction of justice statutes. See Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972))); De la Cruz, 998 F.3d at 517-18.

### 2. The Statute's Relationship to Other Federal Statutes Confirms That Accessory After the Fact Is "An Offense Relating to Obstruction of Justice"

In addition to the text of § 1101(a)(43)(S) and the other text of the INA, we consider "closely related federal statute[s]" in determining the generic federal definition of an aggravated felony offense. Esquivel-Quintana, 137 S. Ct. at 1570-71; cf. De la Cruz, 998 F.3d at 517-18.

### a. The Federal Accessory-After-The-Fact Statute and the Federal Bribery Statute Support That the Generic Federal Definition Does Not Require a Nexus to a Pending or Ongoing Investigation or Judicial Proceeding

The federal accessory-after-the-fact statute, 18 U.S.C. § 3, is relevant to determining the generic federal definition of "an offense relating to obstruction of justice." That statute provides that "[w]hoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." Id. "[H]inder[ing] or prevent[ing]" is a type of obstructive conduct and "apprehension, trial or punishment" are all different stages in the process of "justice." In that way, the federal accessory-after-the-fact statute relates to "obstruction of justice."[10] That statute does not require a nexus to a pending or ongoing investigation or judicial proceeding and reaches conduct preceding an investigation or proceeding. See, e.g., United States v. Neal, 36 F.3d 1190, 1195, 1211 (1st Cir. 1994) (affirming the

_____

[10] The Massachusetts accessory-after-the-fact statute prohibits "harbor[ing], conceal[ing], maintain[ing] or assist[ing] the principal felon or accessory before the fact, or giv[ing] such offender any other aid, knowing that he has committed a felony or has been accessory thereto before the fact, with intent that he shall avoid or escape detention, arrest, trial or punishment." Mass. Gen. Laws ch. 274, § 4. That statute covers substantially the same conduct as that proscribed by the federal accessory-after-the-fact statute.

defendant's conviction for accessory after the fact where he provided aid to his co-defendants immediately after they robbed a bank and helped them to escape apprehension).

This understanding of the federal accessory-after-the-fact statute as relating to obstruction of justice is bolstered by case law from the federal circuit courts of appeal before 1996. See United States v. Brown, 33 F.3d 1002, 1004 (8th Cir. 1994) (stating that "[t]he gist of being an accessory after the fact lies essentially in obstructing justice by rendering assistance to hinder or prevent the arrest of the offender after he [or she] has committed the crime" (alteration in original) (emphasis added) (quoting United States v. Barlow, 470 F.2d 1245, 1252-53 (D.C. Cir. 1972))); United States v. Huppert, 917 F.2d 507, 510 (11th Cir. 1990) (same), superseded by statute in other part, U.S. Sent'g Guidelines Manual § 2J1.2(c)(1), cmt. (U.S. Sent'g Comm'n 1991); United States v. Balano, 618 F.2d 624, 631 (10th Cir. 1979) (same), abrogated in other part by Richardson v. United States, 468 U.S. 317 (1984); United States v. Willis, 559 F.2d 443, 444 (5th Cir. 1977) (same); Gov't of V.I. v. Aquino, 378 F.2d 540, 553 & n.19 (3d Cir. 1967) (same); see also Pugin v. Garland, 19 F. 4th 437, 447 n.8 (4th Cir. 2021) (collecting cases). This consistent interpretation of the federal accessory-after-the-fact statute when § 1101(a)(43)(S) was enacted supports interpreting "an offense relating to obstruction of justice" to include accessory

after the fact.  See Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1072 (2020) ("We normally assume that Congress is 'aware of relevant judicial precedent' when it enacts a new statute." (quoting Merck & Co. v. Reynolds, 559 U.S. 633, 648 (2010))).

Another federal statute we consider is the statute related to bribery of a witness.[11]  See 18 U.S.C. § 201.  The federal witness bribery statute includes the giving or offering of bribes to witnesses who give testimony at a hearing before a congressional committee.  Id. § 201(b)(3), (c)(2).  The witness bribery statute also supports our reading of § 1101(a)(43)(S) as not requiring a nexus to a pending or ongoing investigation or judicial proceeding.

> **b.** **Several Obstruction of Justice Offenses Under 18 U.S.C. Chapter 73 Do Not Require a Nexus to a Pending or Ongoing Investigation or Judicial Proceeding**

Silva argues that we should look exclusively to Chapter 73 of Title 18 of the U.S. Code, which is titled "Obstruction of Justice," to determine the generic federal definition of "obstruction of justice."  He asserts that Chapter 73 cannot be

---

[11]    Amici argue that, because the phrase "obstruction of justice" appears next to "perjury or subornation of perjury" and "bribery of a witness" in § 1101(a)(43)(S), all three must be read to share the common characteristic of a nexus to a pending or ongoing investigation or judicial proceeding.  We do not agree that the federal witness bribery statute requires a nexus to a pending or ongoing judicial proceeding and so this cannot be a common characteristic to all three offenses listed.

reviewed for its components but must be read as a whole to require a nexus to a pending or ongoing investigation or judicial proceeding. We disagree. Chapter 73 contains many offenses and cannot be read as a whole.

Section 1512, which is titled "[t]ampering with a witness, victim, or an informant," specifically provided in 1996 that "[f]or the purposes of this section . . . an official proceeding need not be pending or about to be instituted at the time of the offense."[12] 18 U.S.C. § 1512(e)(1) (1996); see Pugin, 19 F.4th at 445.[13] Nor does the text of § 1511, which prohibited the "[o]bstruction of State or local law enforcement,"[14] require

_____

[12] The Ninth Circuit reads § 1512 as "underscor[ing] that the common understanding at the time § 1101(a)(43)(S) was enacted into law was that an obstruction offense referred only to offenses committed while proceedings were ongoing or pending. [For] [i]f that were not the case, it would not have been necessary for Congress to make clear that § 1512 operates differently than the other provisions in Chapter 73." Valenzuela-Gallardo, 968 F.3d at 1065-66. Not so. A proceeding that is about to be instituted is not pending or ongoing, but it could be reasonably foreseeable. The "about to be instituted" language thus suggests that Congress believed that obstruction of justice could encompass the frustration of official proceedings that are not yet in place.

[13] In Pugin, the Fourth Circuit relied on Chevron deference to conclude that Virginia accessory after the fact is "an offense relating to obstruction of justice" for purposes of § 1101(a)(43)(S). 19 F.4th at 439. We find much of the Fourth Circuit's analysis persuasive.

[14] In any event, as to those Chapter 73 offenses which do require a nexus to a pending or ongoing investigation or judicial proceeding, it is clear that Congress did not intend for those specific offenses to define "an offense relating to obstruction of justice" for purposes of § 1101(a)(43)(S). For that same reason, we reject Silva's argument that we cannot consider the federal

- 20 -

that an investigation or judicial proceeding be pending or ongoing. Id. § 1511 (1996).

Indeed, as the Fourth Circuit recently held, obstruction of justice for the purposes of § 1101(a)(43) is not limited to "the narrow confines of Chapter 73." Pugin, 19 F.4th at 445.

### c. Congress Intended Obstruction of Justice to be Read More Broadly Than Other Aggravated Felonies

Congress specifically included cross-references to other federal statutes in defining other offenses that constitute aggravated felonies under § 1101(a)(43), but it included no cross-reference to Chapter 73 or any particular offense under that chapter to define "an offense relating to obstruction of justice." Congress also deliberately used the qualifier "relating to" in conjunction with "obstruction of justice" in § 1101(a)(43)(S), even though it did not do so for most of the other offenses listed as aggravated felonies under the INA. This shows that Congress clearly did not intend for "an offense relating to obstruction of justice" to be restricted only to the obstruction of justice offenses listed under Chapter 73, let alone to any particular Chapter 73 offense that requires a nexus to a pending or ongoing

---

accessory-after-the-fact statute, 18 U.S.C. § 3, because it is not located under Chapter 73.

investigation or judicial proceeding.[15]  See Pugin, 19 F.4th at

448; Russello, 464 U.S. at 23; De la Cruz, 998 F.3d at 517-18; see

also Esquivel-Quintana, 137 S. Ct. at 1571 (noting that "many other

aggravated felonies in the INA are defined by cross-reference to

other provisions of the United States Code," and relying on a

related federal statute "for evidence of the meaning of [the

aggravated felony offense], but not as providing the complete or

exclusive definition" where there was no such cross-reference);

cf. Mellouli, 575 U.S. at 808 n.9, 811 n.11 (noting the importance

of the relationship between the language "relating to" in the

---

[15]    For this reason, the Supreme Court's decision in United
States v. Aguilar, 515 U.S. 593 (1995), also does not support
Silva's reading of § 1101(a)(43)(S).  Aguilar held that, for
purposes of the "catchall" provision of 18 U.S.C. § 1503, which
criminalizes "[i]nfluencing or injuring [an] officer or [a] juror
generally," "[t]he action taken by the accused must be with an
intent to influence judicial or grand jury proceedings; it is not
enough that there be an intent to influence some ancillary
proceeding, such as an investigation independent of the court's or
grand jury's authority."  515 U.S. at 599 (emphasis added); see
also id. at 600-01 (holding that making false statements to an
investigating officer "who might or might not testify before a
grand jury" was insufficient to violate the catchall provision of
§ 1503); 18 U.S.C. § 1503(a) (1996) (prohibiting "corruptly or by
threats or force, or by any threatening letter or communication,
influenc[ing], obstruct[ing], or imped[ing], or endeavor[ing] to
influence, obstruct, or impede, the due administration of
justice").
    That decision addressed only the specific statute at issue
and did not establish the requirements of "obstruction of justice"
more generally.  Nor does § 1101(a)(43)(S) incorporate § 1503's
particular definition of "obstruction of justice" through cross-
reference.  Even Silva acknowledges that a nexus to a pending or
ongoing investigation would be enough to satisfy his purported
nexus requirement.

statute and a specific statutory cross-reference in applying the categorical approach).[16]

### 3. Other Sources of the Statute's Meaning Support That Accessory After the Fact Is "An Offense Relating to Obstruction of Justice"

In addition to the text and structure of the statute and closely related federal statutes, we also consider other indicia identified in Esquivel-Quintana in determining the generic federal definition of "an offense relating to obstruction of justice."

#### a. A Consensus of State Obstruction of Justice Statutes Confirm That "An Offense Relating to Obstruction of Justice" Does Not Require a Nexus to a Pending or Ongoing Investigation or Judicial Proceeding

One of those other sources we consider is a consensus of "state criminal codes" which "we look to . . . for additional evidence about the generic meaning of" an offense.  Esquivel-

---

[16] Silva relies on the Third Circuit decision in Flores v. Attorney General, 856 F.3d 280, 292-96 (3d Cir. 2017), and the Ninth Circuit decision in Valenzuela Gallardo, which held that state convictions for accessory after the fact were not offenses relating to obstruction of justice because they lacked a nexus requirement.  We find neither persuasive.  Both Flores and Valenzuela Gallardo relied exclusively on offenses listed under Chapter 73 in defining the generic federal definition of § 1101(a)(43)(S) and discounted or did not consider other evidence of the statute's meaning.  See Flores, 856 F.3d at 287-96; id. at 297-301 (Shwartz, J., concurring, in part, and dissenting, in part) (disagreeing with the majority that the court was limited to consideration of only Chapter 73 offenses to determine the generic federal definition of "an offense relating to obstruction of justice" and concluding that a South Carolina accessory-after-the-fact conviction related to obstruction of justice); Valenzuela Gallardo, 968 F.3d at 1062-69.

Quintana, 137 S. Ct. at 1571; see also id. at 1571 n.3 (noting that a multijurisdictional analysis of state criminal codes can aid interpretation by providing "useful context"). When § 1101(a)(43)(S) was added to the INA, seventeen states used phrases like "obstruction of justice" or "obstructing justice" to define certain crimes. See Colo. Rev. Stat. §§ 18-8-101 to -116 (1996); Fla. Stat. §§ 843.01 to .19 (1996); Haw. Rev. Stat. § 710-1072.5 (1996); 720 Ill. Comp. Stat. 5/31-4 (1996); Ind. Code § 35-44-3-4 (1996); Iowa Code §§ 719.1 to .8 (1996); La. Stat. Ann. § 14:130.1 (1996); Miss. Code Ann. § 97-9-55 (1996); Mont. Code Ann. § 45-7-303 (1996); N.C. Gen. Stat. §§ 14-221 to -227 (1996); Ohio Rev. Code Ann. § 2921.32 (1996); R.I. Gen. Laws §§ 11-32-1 to -7 (1996); Tenn. Code Ann. §§ 39-16-601 to -609 (1996); Utah Code Ann. § 76-8-306 (1996); Vt. Stat. Ann. tit. 13, § 3015 (1996); Va. Code Ann. § 18.2-460 (1996); Wis. Stat. § 946.65 (1996). Of these, only three may have limited the obstruction of justice offenses to those involving a pending or ongoing investigation or judicial proceeding. See Haw. Rev. Stat. § 710-1072.5 (1996); Ind. Code § 35-44-3-4 (1996); Wis. Stat. § 946.65 (1996); see also Pugin, 19 F.4th at 445. Of the other fourteen, at least thirteen did not have such a requirement. See Colo. Rev. Stat. § 18-8-105 (1996); Fla. Stat. §§ 843.01 to .02, .08 (1996); 720 Ill. Comp. Stat. 5/31-4 (1996); Iowa Code §§ 719.1 to .2 (1996); La. Stat. Ann. § 14:130.1 (1996); Mont. Code Ann. § 45-7-303(2)(a)-(b) (1996);

N.C. Gen. Stat. §§ 14-223, -225 (1996); Ohio Rev. Code Ann. § 2921.32(A)(1), (3) (1996); R.I. Gen. Laws §§ 11-32-1 to -2 (1996); Tenn. Code Ann. § 39-16-603 (1996); Utah Code Ann. § 76-8-306(b), (e) (1996); Va. Code Ann. § 18.2-460(A) (1996); Vt. Stat. Ann. tit. 13, § 3015 (1996).

And the obstruction of justice statutes in four of these latter states proscribed conduct which would have been punishable under the federal accessory-after-the-fact statute. See Colo. Rev. Stat. § 18-8-105 (1996); Mont. Code Ann. § 45-7-303(2)(a)-(b) (1996); Ohio Rev. Code Ann. § 2921.32(A)(1), (3) (1996); Utah Code Ann. § 76-8-306(b), (e) (1996). That the vast majority of jurisdictions with obstruction of justice offenses did not limit that concept to only offenses with a nexus to a pending or ongoing investigation or judicial proceeding further confirms our reading of the generic federal definition. See Esquivel-Quintana, 137 S. Ct. at 1571-72.

> **b. The Model Penal Code and Federal Sentencing Guidelines Further Support That Accessory After the Fact Is "An Offense Relating to Obstruction of Justice"**

The Model Penal Code and Federal Sentencing Guidelines also support that "an offense relating to obstruction of justice" includes accessory after the fact. See id. at 1571 (citing the Model Penal Code as evidence of the generic meaning of a term in the INA). When § 1101(a)(43)(S) was enacted, the Model Penal Code

- 25 -

listed "Hindering Apprehension or Prosecution," which proscribes conduct like that proscribed in the federal accessory-after-the-fact statute, under the article for "Obstructing Governmental Operations; Escapes." Model Penal Code § 242.3 (Am. L. Inst. 1985). In describing the offense of hindering apprehension or prosecution of another, the explanatory notes to the Model Penal Code states that the "offense covers the common law category of accessory after the fact but breaks decisively with the traditional concept that the accessory's liability derives from that of his principal . . . [and instead provides that the accessory] is convicted . . . for an independent offense of obstruction of justice." Id. § 242.1 explanatory note; see also Pugin, 19 F.4th at 445.

The Federal Sentencing Guideline for "Obstruction of Justice" in effect in 1996 cross-referenced the guideline for "Accessory After the Fact." See U.S. Sent'g Guidelines Manual § 2J1.2(c) (U.S. Sent'g Comm'n 1995). The commentary to the "Obstruction of Justice" guideline stated that "[b]ecause the conduct covered by this guideline is frequently part of an effort to avoid punishment for an offense that the defendant has committed or to assist another person to escape punishment for an offense, a cross reference to [the Accessory After the Fact guideline] is provided." Id. § 2J1.2 cmt. background (emphasis added). The commentary and cross-reference are further support that there was

an understood connection between accessory after the fact and obstruction of justice when § 1101(a)(43)(S) was adopted.

### 4. Even Assuming Arguendo That There Must Be a Nexus to an Investigation for the Normal Accessory-After-the-Fact Crime, That Nexus Is Satisfied

Assuming arguendo that § 1101(a)(43)(S) requires any nexus to an investigation, whether actually pending or in the offing, the Massachusetts accessory-after-the-fact crime and conviction easily satisfies it.[17]

Mass. Gen. Laws ch. 274, § 4 provides:

> [w]hoever, after the commission of a felony, harbors, conceals, maintains or assists the principal felon or accessory before the fact, or gives such offender any other aid, knowing that he has committed a felony or has been accessory thereto before the fact, with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact.

---

[17] Our dissenting colleague overreads our assumption in this section that a nexus is required. We find in the statutory text no requirement for a nexus, see supra Part II.A.1, and so in our de novo review under Esquivel-Quintana we do not graft a nexus requirement on to the statute. The BIA, however, interpreted the statute to mean that an offender must "interfere with an investigation or proceeding that is ongoing, pending, or 'reasonably foreseeable'" Matter of Valenzuela Gallardo, 27 I. & N. Dec. at 456 (quoting Marinello, 138 S. Ct. at 1110). To the extent the statute is ambiguous, the BIA's interpretation of the nexus requirement is certainly reasonable and due deference. See infra Part II.B. Our de novo analysis makes clear, though, that the BIA could also dispense with its nexus requirement. Either construction would "fill the statutory gap in reasonable fashion." Negusie v. Holder, 555 U.S. 511, 523 (2009)

To be convicted under that statute, the accessory must act with specific intent to enable a felon to "avoid or escape detention, arrest, trial, or punishment."  Absent an investigation, there can be no prosecution and no detention, arrest, trial, or punishment to avoid or escape.

In determining the least culpable conduct that violates the statue, Moncrieffe v. Holder directs us to "focus on the minimum conduct criminalized by the state statue," rather than "apply 'legal imagination' to the state offense."  569 U.S. 184, 191 (2013).  Unlike the dissent, we look not to hypothetical conduct but to the "the least serious conduct for which there is a 'realistic probability' of charge and conviction." United States v. Starks, 861 F.3d 306, 315 (1st Cir. 2017) (quoting id.). Looking at the mine run of prosecutions, we see none for aiding and abetting less serious felonies.  When we look at the seventy Massachusetts state court opinions on Westlaw that cite § 4, the overwhelming majority are convictions for accessory after the fact to homicide.  Those that do not involve homicide, involve other serious offenses: armed robbery, e.g., Commonwealth v. Ayoub, 32 N.E.3d 369 (Mass. App. Ct. 2015) (table); assault with a dangerous weapon, e.g., Commonwealth v. Nick N., 952 N.E.2d 991 (Mass. App. Ct. 2011) (table); arson, Commonwealth v. Sokorelis, 150 N.E. 197 (Mass. 1926); kidnapping, Commonwealth v. Eagan, 259 N.E.2d 548 (Mass. 1970); escape from prison, e.g., Commonwealth v. Holiday,

- 28 -

206 N.E.2d 691 (Mass. 1965); extortion, Commonwealth v. Cachopa, 18 N.E.3d 1137 (Mass. App. Ct. 2014) (table); dealing cocaine, Commonwealth v. St. Pierre, 786 N.E.2d 438 (Mass. App. Ct. 2003) (table); and larceny, e.g., Commonwealth v. Kudrya, 843 N.E.2d 1117 (Mass. App. Ct. 2006) (table). Indeed, the serious nature of the crimes actually prosecuted under § 4 supports our holding that the least culpable conduct likely to be charged under the provision includes a fair probability of criminal investigation.[18] In fact, the serious crimes for which accessory-after-the-fact prosecutions have been brought by their nature would inform any person acting as an accessory that there will be an investigation resulting in "escape detention, arrest, trial or punishment."[19] Further, the

---

[18] Our dissenting colleague relies on Marinello v. United States, 138 S. Ct. 1101 (2018), to support his contention that a felonious money launderer in Massachusetts must have more than mere awareness that the authorities might catch on to his illegal financial scheme. Dissenting Op. at 46-50 (citing Marinello, 138 S. Ct. at 1110). In the dissenting opinion's telling, the government failed to establish that its investigation of Marinello was "reasonably foreseeable," because it could show no more than that mere awareness. Id. at 8 (quoting Marinello, 131 S. Ct. at 1110). But in Marinello, the Court had no opportunity to weigh in on whether the government had presented evidence of foreseeability; the trial judge did not instruct the jury on foreseeability as Marinello requested, Marinello, 138 S. Ct. at 1105, and the Court vacated and remanded, id. at 1110. Thus, the opinion cannot be read -- as our dissenting colleague does -- to support a categorical rule for financial criminals.

[19] We note that on the facts here, an investigation to quote the dissent and "[t]o use a maritime analogy" is easily thought to be "in the offing," Dissenting Op. at 46 (quoting Marinello, 138 S. Ct. at 1110). While the dissent seems to treat the offing as a term of proximity, it refers, in the maritime sense, to "[t]he

statute requires a specific intent to do so, buttressing our analysis.

These offenses are also markedly different from the tax fraud scheme in United States v. Marinello, on which our dissenting colleague puts so much weight, in another key way. Persons are often able to skirt tax laws and go undetected for some time. Indeed, by definition, a person who commits tax evasion attempts to conceal his acts and evade detection. United States v. Stierhoff, 549 F.3d 19, 25 (1st Cir. 2008) (elements of tax evasion include "an affirmative act of evasion or attempted evasion"); see, e.g., United States v. Marek, 548 F.3d 147, 150-51 (1st Cir. 2008) (defendant falsified invoices); United States v. Lavoie, 433 F.3d 95, 98-100 (1st Cir. 2005) (defendant intentionally underreported revenue). An investigation of a tax offense would not be in the offing upon the commission of the offense. By contrast, consider murder, the underlying crime here. Following a homicide, more often than not the murder is reported, or a body is found, or a person is reported missing. A law enforcement investigation is reasonably foreseeable. Also consider robbery or

_____

part of the sea visible from the shore that is very distant or beyond anchoring ground." Offing, The American Heritage Dictionary of the English Language 1223 (5th ed. 2018); accord offing, The New Oxford American Dictionary 1181 (2d ed. 2005) ("[T]he more distant part of the sea in view."). For this crime and for any of the serious crimes that have actually triggered an accessory-after-the-fact investigation in Massachusetts, the investigation could be spotted on the horizon.

- 30 -

extortion, crimes which underlie other actual Massachusetts accessory-after-the-fact prosecutions. These crimes involve immediate harm to a victim, unlike with tax crimes, where the government must uncover an offense against the fisc. In such situations, it is more likely that a law enforcement investigation is in the offing.

For the reasons stated above, it is clear that Silva's Massachusetts accessory-after-the-fact conviction is an aggravated felony under § 1101(a)(43)(S) because it is categorically "an offense relating to obstruction of justice."[20]

### 5.   The Dissent Misreads the BIA's Analysis

There is no basis to conclude that we have adopted a much looser nexus requirement than the BIA. Our dissenting colleague overreads the BIA's analysis in Matter of Valenzuela Gallardo to create a far tighter nexus requirement than the agency did.

---

[20]   We need not determine the precise boundaries of what constitutes "an offense relating to obstruction of justice" under § 1101(a)(43)(S). Cf. Esquivel-Quintana, 137 S. Ct. at 1572. It is enough that the various sources show that accessory after the fact, as defined under the Massachusetts statute, clearly relates to obstruction of justice for purposes of the INA. For that same reason, Silva's argument that the statute is void for vagueness is also meritless. See United States v. Zhen Zhou Wu, 711 F.3d 1, 16 (1st Cir. 2013) ("[W]e consider 'whether a statute is vague as applied to the particular facts at issue,' for a defendant 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" (quoting Holder v. Humanitarian L. Project, 561 U.S. 1, 18-19 (2010)) (emphasis in original)).

The BIA held that generic obstruction of justice "cover[s] crimes involving (1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere with an investigation or proceeding that is ongoing, pending, or 'reasonably foreseeable by the defendant.'" Matter of Valenzuela Gallardo, 27 I. & N. Dec. at 456 (quoting Marinello, 138 S. Ct. at 1110); see also id. at 456 n.9. The BIA identified three types of investigations covered by the offense: ongoing, pending, and reasonably foreseeable. But our dissenting colleague takes such a narrow view of "reasonably foreseeable" that it essentially merges into ongoing and pending investigations. He errs, in part, by interpreting the BIA's quotation of the reasonably foreseeable language in Marinello to require an identical nexus in both the statute at issue there, 26 U.S.C. § 7212(a), and the statute at issue here, § 1101(a)(43)(S). The BIA, however, expressly rejected that false equivalence, explaining that "Congress intended section 101(a)(43)(S) of the Act to apply more broadly than the provisions at issue in . . . Marinello." 27 I. & N. Dec. at 454 n.6.[21]

---

[21]    In our view, our dissenting colleague is also incorrect when he argues that Chenery I requires us to interpret Marinello identically to the BIA. Dissenting Op. at 60-62; see SEC v. Chenery Corp., 318 U.S. 80, 95 (1943). Chenery I "merely hold[s] that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." 318 U.S. at 95. To be sure we cannot substitute a new rationale when the agency "misconceive[s] the law," id., but when the agency clearly states

To confirm that the dissent misconstrues the BIA's decision, we need look no further than the BIA implementation of Matter of Valenzuela Gallardo. In Matter of Cordero-Garcia, the BIA held that the California offense of dissuading a witness is categorically an offense related to obstruction of justice. 27 I. & N. 652, 653-54 (2019) (citing Cal. Penal Code § 136.1(b)(1)), petition for review filed sub nom. Cordero-Garcia v. Garland, No. 19-72779 (9th Cir. argued Feb. 11, 2022). The BIA held that the statute's specific intent requirement implied that " an investigation or proceeding would necessarily be either ongoing, pending, or reasonably foreseeable." Id. at 654. "In other words," it concluded, "there would be little reason for a person to try to prevent or dissuade a victim or witness from reporting the crime to appropriate authorities unless there was an investigation in progress[,] or one was reasonably foreseeable."

---

its legal basis for acting, Chenery I does not require that we follow the exact same interpretative path in sustaining the agency's actions, see H.J. Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders, 1969 Duke L.J. 199, 211. The BIA determined that Massachusetts accessory-after-the-fact is categorically an offense related to obstruction of justice, that Silva was convicted of that offense, and that he was therefore ineligible for withholding of removal. We deny Silva's petition on the same grounds. To the extent that we read the INA to authorize the BIA to act through a potentially different pathway is of no moment. To hold otherwise would be perilous, with the Supreme Court indicating growing disfavor towards deference to administrative agencies, see, e.g., Kisor v. Wilkie, 139 S. Ct. 2400, 2424-2425 (Roberts, C.J., concurring); id. at 2425-2449 (Gorsuch, J., dissenting).

- 33 -

Id.  The BIA's interpretation of that California statute is on all fours with our interpretation of the Massachusetts statute at issue in this case.  It cannot, however, be squared with our dissenting colleague's reading of the nexus requirement articulated in Matter of Valenzuela Gallardo.  Nor can it be reconciled with our dissenting colleague's mens rea\actus reus analysis, because like Matter of Valenzuela Gallardo, Matter of Cordero-Garcia relies solely on a specific intent requirement.

## B.  Alternatively, If § 1101(a)(43)(S) Were Ambiguous, the BIA Would Prevail Under Chevron deference

Assuming, arguendo, that the statute is ambiguous and thus subject to Chevron deference,[22] we must defer to the BIA's interpretation.  See Scialabba v. Cuellar de Osorio, 573 U.S. 41, 56 (2014); Chevron, 467 U.S. at 844.

Chevron deference applies where an agency has followed suitably formal procedures, see United States v. Mead Corp., 533 U.S. 218, 229-30 (2001), to interpret a civil statute it administers, see Gonzales v. Oregon, 546 U.S. 243, 265 (2006).  In applying Chevron, we follow a familiar two-step pathway.  First, we determine whether the statute is ambiguous.  Second, if it is, we defer to the responsible agency's reasonable interpretation of the ambiguous text.  See Chevron, 467 U.S. at 842-43.

---

[22]  In light of Esqiuvel-Quintana, it is not clear which interpretive approach we should employ, so we use both.

- 34 -

**1. At "Step Zero," the BIA's Interpretation Is Eligible for _Chevron_ Deference**

The BIA's administration of the INA falls within <u>Mead</u>'s safe harbor for formal adjudications. See <u>Mead</u>, 533 U.S. at 226-27; <u>see also</u> <u>Negusie</u> v. <u>Holder</u>, 555 U.S. 511, 517 (2009). Its interpretation of § 1101(a)(43)(S) carries the force of law and thus falls within Chevron's domain. See <u>Mead</u>, 533 U.S. at 226-27; <u>see also</u> T.W. Merrill & K.E. Hickman, <u>Chevron's Domain</u>, 89 Geo. L.J. 833 (2001). Silva attempts to avoid that inexorable conclusion, arguing that the decision in his case was unpublished and thus not binding on future parties. That contention, however, looks to the wrong decision. The BIA established its interpretation in a published decision issued by a three-member panel in <u>Matter of Valenzuela Gallardo</u>. See 27 I. & N. Dec. at 449. Once the BIA formally interprets a statue, we may defer to subsequent informal applications of the interpretation. <u>Garcia-Mendez</u> v. <u>Lynch</u>, 788 F.3d 1058, 1061 (9th Cir. 2015) (citing <u>Neguise</u>, 555 U.S. at 516). To require each decision to be published by a three-member panel would be to require more procedural safeguards than Congress intended. <u>Cf.</u> <u>Vt. Yankee Nuclear Power Corp.</u> v. <u>Nat. Res. Def. Council</u>, 435 U.S. 519, 524 (1978).

Additionally, Silva's contention that we cannot defer to the BIA's interpretation of a statute with criminal implications

is misguided. We have previously deferred to the BIA's interpretation of the definition of aggravated felonies,[23] see, e.g., Soto-Hernandez v. Holder, 729 F.3d 1, 5 (1st Cir. 2013); Lecky v. Holder, 723 F.3d 1, 5 (1st Cir. 2013), and continue to do so here.[24]

To hold otherwise would be flatly inconsistent with precedents both of this Court and the Supreme Court. In Chevron itself, the Supreme Court deferred to the EPA's interpretation of the Clean Air Act, even though knowing violation of an implementation plan under that act carried criminal penalties. See Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives, 920 F.3d 1, 24 (D.C. Cir. 2019) (citing 42 U.S.C. § 7413(c)(1) (1982)). Similarly, in Babbitt v. Sweet Home Chapter of Communities for a Great Oregon, the Supreme Court expressly considered the potential criminal penalties for a violation of the Endangered Species Act and deferred to the Secretary of the Interior's interpretation of that law. 515 U.S. 687, 702-704 & 704 n.18. We regularly defer to interpretations of the IRS Commissioner even though violating tax regulations can result in

---

[23] Silva and amici also argue that our previous decisions did not expressly address his proposed "dual-application statute" exception to Chevron. We now hold that no such exception exists.

[24] Our holding certainly does not run afoul of the Supreme Court's observation in United States v. Appel that it has "never held that the Government's reading of a criminal statutes is entitled to any deference." 571 U.S. 359, 369 (2014).

criminal penalties.  See, e.g., Dikow v. United States, 654 F.3d 144, 149-51 (1st Cir. 2011); see also United States v. O'Hagan, 521 U.S. 642, 647 (1997).  Indeed, regulatory offenses carrying criminal penalties are legion in the Code of Federal Regulations, see generally M. Chase, How to Become a Federal Criminal (2019), but we continue to defer to agencies' interpretations of the underlying statutes.

### 2.  Assuming § 1101(a)(43)(S) Is Ambiguous, the BIA's Interpretation of it Is Reasonable

We explained earlier why interpreting § 1101(a)(43)(S) to encompass Massachusetts accessory after the fact is reasonable. See supra Part II.A.  The BIA's understanding of the statute cannot be said to be beyond the "bounds of reasonable interpretation." Michigan v. EPA, 576 U.S. 743 (2015) (quoting Util. Air Regul. Grp. v. EPA, 573 U.S. 302, 321 (2014)).

In the realm of immigration, "Congressional powers are at their apex and judicial powers are at their nadir." Hernandez-Lara v. Lyons, 10 F.4th 19, 54 (Lynch, J., dissenting).  Congress has used that broad power to "charge[] the Attorney General with administering the INA."  Neguise, 555 U.S. at 516-17.  Thus, "[j]udicial deference in the immigration context is of special importance, for executive officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'"  Id. at 517 (quoting INS v. Abudu, 485 U.S. 94, 110

(1988)).  Compared to the executive, "[t]he judiciary is not well positioned to shoulder primary responsibility for assessing the . . . diplomatic repercussions" of sensitive immigration decisions.  INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999); see Griffiths v. INS, 243 F.3d 45, 49 (1st Cir. 2001).  The BIA's exercise of its Congressionally assigned functions certainly was not unreasonable.

**C.  The IJ and BIA Did Not Err in Determining That Silva's Massachusetts Accessory-After-the-Fact Conviction Was a "Particularly Serious Crime" for Purposes of Denying Withholding of Removal**

Silva also argues that even if his Massachusetts conviction is an aggravated felony under § 1101(a)(43)(S), it is not a particularly serious crime that bars him from withholding of removal.  The parties dispute whether the appropriate standard of review of the BIA's particularly-serious-crime determination is de novo or only for substantial evidence.  We need not decide this issue because we conclude that there was no error under either standard of review.

Under Matter of N-A-M-, 24 I. & N. Dec. 336 (B.I.A. 2007), overruled in part on other grounds by Blandino-Medina v. Holder, 712 F.3d 1338, 1347-48 (9th Cir. 2013), which Silva does not challenge, the BIA "examine[s] the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction" in determining whether it is a

particularly serious crime. Id. at 342. "[A]n offense is more likely to be considered particularly serious if it is against a person . . . ." Matter of R-A-M-, 25 I. & N. Dec. 657, 662 (B.I.A. 2012) (citing Matter of N-A-M-, 24 I. & N. Dec. at 343). And factual findings made by the BIA in determining whether a conviction is for "a particularly serious crime" are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," which "is a 'highly deferential' standard." Garland v. Ming Dai, 141 S. Ct. 1669, 1674, 1677 (2021) (first quoting 8 U.S.C. § 1252(b)(4)(B); and then quoting Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020)).

The record supports the BIA's determination that, based on his guilty plea to the Massachusetts indictment, Silva admitted to knowing that the individuals whom he assisted had committed a murder. Based on that finding and Silva's conduct in aiding known murderers to avoid or escape apprehension and punishment, the BIA did not commit any legal or other error in determining that the accessory-after-the-fact conviction was a particularly serious crime which rendered him ineligible for withholding of removal.

## III.

Silva's petition for review of the BIA's final order of removal is denied.

**-DISSENTING OPINION FOLLOWS-**

- 39 -

**BARRON, Circuit Judge, dissenting**.  Is the crime of being an accessory after the fact to a "felony" under Massachusetts law, see Mass. Gen. Laws ch. 274, § 4, an "offense relating to obstruction of justice" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(43)(S), such that this state-law accessorial crime constitutes an "aggravated felony" and thus makes the lawful permanent resident convicted of committing it removable and ineligible for asylum, see 8 U.S.C. §§ 1158(b)(2), 1227(a)(2)(A)(iii)?  In concluding in this case that this state-law accessorial crime is "an offense relating to obstruction of justice" under § 1101(a)(43)(S), the majority rejects the reasoning of the Third Circuit in Flores v. Attorney General, 856 F.3d 280 (3d Cir. 2017), and the Ninth Circuit in Valenzuela Gallardo v. Barr (Valenzuela Gallardo IV), 968 F.3d 1053 (9th Cir. 2020).  But, even accepting that the majority is right to reject the reasoning of those courts, it is wrong to uphold the ruling of the Board of Immigration Appeals ("BIA") that the Massachusetts accessory-after-the-fact offense of which Carlos Monteiro Silva was convicted is an "obstruction of justice"-related offense within the meaning of § 1101(a)(43)(S).

## I.

It helps first to explain exactly how the majority's construction of § 1101(a)(43)(S) differs from that of the Third Circuit in Flores and the Ninth Circuit in Valenzuela Gallardo IV.

Each of those cases rejected the construction of the phrase "an offense relating to obstruction of justice" in § 1101(a)(43)(S) that the BIA had adopted in Matter of Valenzuela Gallardo (Valenzuela Gallardo III), 27 I. & N. Dec. 449 (BIA 2018).

The Third and Ninth Circuits held that the "obstruction of justice"-related offense referred to in that federal statute requires proof of a much tighter nexus than the BIA in Valenzuela Gallardo III had held that the offense requires between an official investigation or proceeding and the obstructive conduct. Specifically, those courts held that the required nexus needs to be between the obstructive conduct and an official investigation or proceeding that, at the time of that conduct, was at least pending and not, for example, merely reasonably foreseeable. Valenzuela Gallardo IV, 968 F.3d at 1068; Flores, 856 F.3d at 292-294.

Moreover, on that basis, the Third and Ninth Circuits rejected the BIA's determination in each of the cases before them that an accessory after the fact offense that did not require proof of such a tight nexus could be "an offense relating to obstruction of justice" within the meaning of § 1101(a)(43)(S). Valenzuela Gallardo IV, 968 F.3d at 1069; Flores, 856 F.3d at 293-96. And, the Third and Ninth Circuits further held, persuasively in my view, that the words "relating to" in § 1101(a)(43)(S) -- though words of inclusion -- do not bring within the scope of the offense

- 41 -

referred to in that provision an offense that is not itself an "obstruction of justice" offense at all. Valenzuela Gallardo IV, 968 F.3d at 1068; Flores, 856 F.3d at 290-91, 296.

In Silva's case, the BIA embraced the same looser description of the nexus requirement that the BIA had embraced in Valenzuela Gallardo III and that the Third and Ninth Circuits rejected for not being tight enough. The BIA then ruled based on that understanding of the nexus requirement that Silva's state-law accessorial offense is an "offense relating to obstruction of justice" under § 1101(a)(43)(S).

Silva now contends that we must reject the BIA's ruling in his case for essentially the reasons that Flores and Valenzuela Gallardo IV gave in ruling as they did in those cases. But, Silva does not ask us to overturn the BIA's ruling only by asking us to endorse the tighter nexus that the Third and Ninth Circuits described. He also contends, as a fallback argument, that even if we were to accept that the BIA has correctly described the nexus requirement to be looser than the Third and Ninth Circuits held it to be, the Massachusetts accessory-after-the-fact offense of which he was convicted would not be an "offense relating to obstruction of justice" under § 1101(a)(43)(S) because the least of the conduct that this accessorial offense criminalizes would still not be encompassed by that generic, federal "obstruction of justice"-

related offense.  See Moncrieffe v. Holder, 569 U.S. 184, 190-91 (2013).

As I will explain, Silva's fallback argument for granting his petition for review is a winning one.  For that reason, the majority's holding that the BIA's construction of the nexus requirement for "an offense relating to obstruction of justice" is a reasonable one under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), provides no basis for me to conclude otherwise.  In that holding, the majority just endorses -- after drawing on the approach for interpreting § 1101(a)(43) that the Supreme Court set forth in Esquivel-Quintana v. Sessions, 137 S. Ct. 1562 (2017) -- the reasonableness of construing the "obstruction of justice"-related offense referred to in § 1101(a)(43)(S) to be constrained only by a nexus requirement that is as loose as the one that the BIA has described. For, as Silva persuasively contends, the BIA's construction of "an offense relating to obstruction of justice" -- given the looseness of that construction's understanding of the nexus requirement -- still defines that offense to encompass more conduct than the least of the conduct that Silva's accessorial offense of conviction encompasses.

But, I emphasize, I also can see no reason to reject Silva's fallback argument insofar as the majority independently means to hold -- again pursuant to Esquivel-Quintana but this time

without purporting to afford any deference under Chevron -- that the generic, federal "obstruction of justice"-related offense to which § 1101(a)(43)(S) refers is not constrained by any nexus requirement at all. For, under SEC v. Chenery Corp., 318 U.S. 80, 94 (1943), we cannot sustain the BIA's ruling in Silva's case based on such a nexus-less construction of that offense unless we are bound to adopt that construction to the exclusion of the nexus-based one that the BIA has set forth and that the majority itself agrees is reasonable. And, as I will explain, the majority offers no persuasive reason to conclude that a nexus-less construction must be adopted over the nexus-based one that the BIA has set forth.

## II.

Before turning to the majority's independent holding endorsing a nexus-less construction of the offense referred to in § 1101(a)(43)(S), it makes sense to start with the majority's more modest one. True, the majority concludes in that holding that the offense requires some such nexus to be shown and that the BIA's operative description of that nexus requirement is a reasonable one. But, as I will explain, that holding provides no basis for rejecting Silva's petition for review, despite being nexus-based. To show why, it is necessary, as an initial matter, to explain in more detail just what the BIA's operative understanding of that nexus requirement is. I thus now turn to that task.

**A.**

In <u>Valenzuela Gallardo III</u>, the BIA was attempting to address a Ninth Circuit ruling that had rejected a prior BIA construction of § 1101(a)(43)(S). <u>See</u> 27 I. & N. Dec. at 451-52. The Ninth Circuit had held that the BIA's earlier construction rendered the "obstruction of justice"-related offense to which § 1101(a)(43)(S) refers too vague. <u>See</u> <u>Valenzuela Gallardo</u> v. <u>Lynch</u> (<u>Valenzuela Gallardo II</u>), 818 F.3d 808, 812, 824 (9th Cir. 2016), <u>vacating and remanding</u> <u>Matter of Valenzuela Gallardo</u> (<u>Valenzuela Gallardo I</u>), 25 I. & N. 838 (BIA 2012). That was so, the Ninth Circuit explained, because that construction did not require as an element of that offense any nexus between the defendant's obstructive conduct and an official investigation or proceeding and so left unclear the kind of conduct that would qualify as obstructive. <u>Id.</u>

To address that concern, the BIA explained in <u>Valenzuela Gallardo III</u> that, in accord with <u>Esquivel-Quintana</u>, it would draw its revised understanding of the offense referred to in § 1101(a)(43)(S) from "Federal and State law, Federal sentencing guidelines, the Model Penal Code, and scholarly commentary." 27 I. & N. Dec. at 452-53 (citing <u>Esquivel-Quintana</u>, 137 S. Ct. at 1570-72). The BIA then focused heavily, though not exclusively, on the offenses set forth in Chapter 73 of the federal criminal code, which is entitled "Obstruction of Justice." <u>Id.</u> at 453-56.

- 45 -

In canvassing those materials, the BIA in Valenzuela Gallardo III acknowledged that most of the offenses in Chapter 73 contained a quite tight nexus requirement; the provisions in that chapter that set forth those offenses made clear that they could be committed only if the defendant obstructed an investigation or proceeding that was in fact pending. Id. at 454. But, the BIA also noted that the "Obstruction of Justice" offense set forth in 18 U.S.C. § 1512 was different. Id.

At the time that § 1101(a)(43)(S) was enacted, the BIA pointed out, § 1512 provided in relevant part that it was a crime knowingly to use "intimidation, physical force, threats, corrupt persuasion, or misleading conduct toward another person with the intent to . . . 'hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense.'" Id. (emphasis omitted) (quoting 18 U.S.C. § 1512(b) (1994)). The BIA then also explained that the Supreme Court in Marinello v. United States, 138 S. Ct. 1101 (2018), had offered a "synthesi[s]" of the cases that had construed § 1512's nexus requirement and that the Court in Marinello had relied on that body of precedent to define the nexus required under the Internal Revenue Code provision that was there at issue, which made it a crime to interfere with investigations into tax crimes, see 26 U.S.C. § 7212(a). 27 I. & N. Dec. at 455.

- 46 -

The BIA explained that, in setting forth the synthesis of the case law that concerned § 1512's nexus requirement, Marinello made clear that § 1512 required proof of a nexus between the defendant's obstructive conduct and an official investigation that was merely "'reasonably foreseeable by the defendant' at the time of the obstructive conduct" rather than pending as of that time.  Valenzuela Gallardo III, 27 I. & N. Dec. at 455 (quoting Marinello, 138 S. Ct. at 1110).  The BIA also explained that Congress would have been aware of that Marinello-based understanding of § 1512's nexus requirement in enacting § 1101(a)(43)(S).  Id. at 455-56.  Based on that conclusion about what Congress would have known, the BIA then relied on the Marinello-based understanding of the required nexus in § 1512 to define "an offense relating to obstruction of justice" in a way that encompassed obstructive conduct so long as it was connected to "reasonably foreseeable" proceedings or investigations.

It is thus clear that Valenzuela Gallardo III was relying on Marinello's understanding of the "reasonably foreseeable" standard for defining the required nexus to address the vagueness concern that had led the Ninth Circuit to reject the BIA's prior nexus-less construction of § 1101(a)(43)(S).  And, that is notable for present purposes because Marinello explained that the "reasonably foreseeable" standard, though more expansive than a

pending-investigation-or-proceeding standard such as the Third and Ninth Circuits had embraced, is still importantly constrained.

Specifically, the Court in Marinello made a point of explaining that to demonstrate that a "proceeding" or "investigation" was "reasonably foreseeable" at the time of the obstructive conduct, "[i]t is not enough for the Government to claim that the defendant knew [law enforcement] may catch on to his unlawful scheme eventually. To use a maritime analogy, the proceeding must at least be in the offing." Marinello, 138 S. Ct. at 1110. Thus, Marinello clearly rejected the notion that evidence that a defendant had engaged in a tax scheme that was unlawful could suffice in and of itself to prove that the "reasonably foreseeable"-based nexus requirement had been met under the federal tax crime there at issue for "obstruct[ing] or imped[ing] . . . the due administration" of Title 26. See id. (discussing 26 U.S.C. § 7212(a)).

Indeed, were that not so, the Court could have just said that proof of the defendant's predicate unlawful tax scheme would suffice to satisfy that nexus requirement for the offense defined in 26 U.S.C. § 7212 rather than that proof that law enforcement "may catch on to" that scheme "eventually" would not be enough to satisfy that requirement. After all, proof of the existence of the predicate unlawful tax scheme, in and of itself, would necessarily constitute proof that at least such a mere eventuality

was possible.  And, indeed, our own precedent accords with this same understanding of the narrowing import of Marinello's "in the offing" gloss on the "reasonably foreseeable" standard that the Court there described as constraining the nexus requirement not only for the offense at issue in that case but also for those like it, such as the one set forth in § 1512.  See United States v. Takesian, 945 F.3d 553, 566-67 (1st Cir. 2019) (concluding a proceeding was reasonably foreseeable to the defendant under the Marinello standard because he knew that "the [Internal Revenue Service] was investigating the money trail that could lead to him" and because he testified that "he believed investigators put the screws on him").[25]

There is, of course, a separate question regarding the element or elements of the "obstruction of justice"-related offense referred to in § 1101(a)(43)(S) that the BIA understood to be constrained by the nexus requirement to which this "reasonably

---

[25] The majority notes that the phrase "in the offing" "refers, in the maritime sense, to '[t]he part of the sea visible from the shore that is very distant or beyond anchoring ground.'"  Maj. Op. at 29 n.19 (quoting Offing, The American Heritage Dictionary of the English Language 1223 (5th ed. 2018)).  The majority emphasizes the "very distant" portion of this definition; to me, the most important part for present purposes is the "visible" part.  But, we need not parse the dictionary entry too finely because Marinello makes clear that it used the phrase "in the offing" to establish that the government has not proven an investigation to have been "reasonably foreseeable" when all it has shown is that "the defendant knew [law enforcement] may catch on to his unlawful scheme eventually," 138 S. Ct. at 1110.

foreseeable" standard applies. I have thus far described the nexus requirement as if it constrains the elements of that offense that define its actus reus and not merely its mens rea. And, that is for good reason.

The BIA, after having canvassed Chapter 73, Marinello, and other aspects of federal and state law, as well as other materials, expressly laid out the elements of the "obstruction of justice"-related offense in § 1101(a)(43)(S) as follows: "(1) an affirmative and intentional attempt (2) that is motivated by a specific intent (3) to interfere with an investigation or proceeding that is ongoing, pending, or 'reasonably foreseeable by the defendant.'" Valenzuela Gallardo III, 27 I. & N. Dec. at 460 (emphasis added). Given the BIA's use of the word "attempt" in "(1)," and the word "is" in "(3)," the BIA must be read here to be describing the nexus requirement as a constraint on -- at least -- the scope of the offense's actus reus and not only on its mens rea.[26]

_____

[26] Nor should we be surprised that the BIA in Valenzuela Gallardo III chose to treat the "reasonably foreseeable" standard as a constraint that limited -- at least -- the actus reus of the generic, federal "obstruction of justice"-related offense. As we have seen, the BIA there was borrowing the "reasonably foreseeable" standard from the one that the Court had announced in Marinello. And, Marinello clearly treated that standard as if it were a constraint on the actus reus of the offense there at issue rather than only on the offense's mens rea. Specifically, in articulating the "reasonably foreseeable" constraint on the scope of the offense set forth in § 7212 of Title 26, Marinello focused its interpretive

As a result, I understand the BIA in <u>Valenzuela Gallardo III</u> to describe the offense referred to in § 1101(a)(43)(S) as one that requires proof of a nexus between the obstructive conduct and an investigation or proceeding that is in fact reasonably foreseeable at the time of that conduct. I thus understand the BIA to describe that offense in a manner that is at odds with the notion that proof that the defendant merely <u>believed</u> at that time (even if mistakenly) that an investigation was reasonably foreseeable could be enough.

That said, I am aware that the BIA in <u>Valenzuela Gallardo III</u> did assert that Congress intended § 1101(a)(43)(S) to encompass both the federal accessory-after-the-fact offense, 18 U.S.C. § 3, and the California accessory-after-the-fact offense at issue in that case, too. 27 I. & N. Dec. at 459, 461 & n.17. I am also aware that the BIA in that case explained that each of these accessorial offenses is encompassed by § 1101(a)(43)(S) because of its mens rea element -- in the case of the federal one, the specific intent "to hinder or prevent [an offender's]

_____

lens on the phrases "obstructs or impedes" and "due administration" in that statute. 138 S. Ct. at 1106. Each of those phrases concerns the actus reus of the offense that the statute sets forth. By contrast, the consensus among lower courts at the time was that "the statute's <u>mens rea</u> requirement" was embodied in the word "corruptly" in that statute, <u>United States</u> v. <u>Miner</u>, 774 F.3d 336, 347 (6th Cir. 2014) (collecting cases); <u>see also</u> <u>United States</u> v. <u>Sorensen</u>, 801 F.3d 1217, 1229-30 (10th Cir. 2015), which is a word that was not at issue in <u>Marinello</u>.

- 51 -

apprehension, trial or punishment," 18 U.S.C. § 3, and in the case of the California one, the specific intent "to interfere either in an ongoing, pending, or reasonably foreseeable investigation or proceeding," 27 I. & N. Dec. at 461. Finally, I am aware that in theory such an intent could be proved without there being proof that any such investigation or proceeding was in fact reasonably foreseeable at the time of the defendant's accessorial conduct. See People v. Rizo, 996 P.2d 27, 30-31 (Cal. 2000) (holding that "a specific intent crime" that "focuses solely on the acts and intent of the violator" may be committed even if the defendant's intent is based on a mistaken understanding).

Nonetheless, as I have explained, the BIA, after completing its analysis of § 1101(a)(43)(S) in accord with Esquivel-Quintana, quite clearly described the actus reus of the offense to be "an affirmative and intentional attempt . . . to interfere with an investigation or proceeding that is ongoing, pending, or 'reasonably foreseeable by the defendant.'" Valenzuela Gallardo III, 27 I. & N. Dec. at 460 (emphasis added). And, the government in its briefing to us cites to that same description in describing the BIA's understanding of the nexus requirement just as I have. Thus, in light of the BIA's express description of the elements of the offense in § 1101(a)(43)(S), I see no basis for concluding that the BIA has set forth a reasoned basis for construing that offense's actus reus to be unconstrained

- 52 -

by the "reasonably foreseeable"-based nexus requirement. Cf. Pugin v. Garland, 19 F.4th 437, 450 (4th Cir. 2021) (noting that courts "give no deference to the Board's construction of state law or determination of its fit with federal law," despite the court's finding that deference was due to the BIA's interpretation of § 1101(a)(43)(S)); Higgins v. Holder, 677 F.3d 97, 109 (2d Cir. 2012) (Katzmann, J., concurring) (same).[27]

---

[27] In the same "Application" section of Valenzuela Gallardo III in which the BIA discussed the California statute, it explained that the Marinello-informed, "reasonably foreseeable"-based construction of the nexus requirement for the actus reus of "an offense relating to obstruction of justice" that it was adopting was "consistent with [its] prior holdings." Valenzuela Gallardo III, 27 I. & N. Dec. at 460. It then pointed to cases in which it had held that although the offense set forth by the federal accessory-after-the-fact statute, 18 U.S.C. § 3, is an "offense relating to obstruction of justice" under the INA, the offense set forth in the federal misprision of felony statute, id. § 4, is not. Valenzuela Gallardo III, 27 I. & N. Dec. at 460 (citing Matter of Espinoza-Gonzalez, 22 I. & N. Dec. 889, 894 (BIA 1999) and In re Batista-Hernandez, 21 I. & N. Dec. 955, 962 (BIA 1997)). And, the BIA did so with reference to the specific intent element of the federal accessory-after-the-fact offense. Id. at 461. But, Valenzuela Gallardo III did not explain in discussing Espinoza -- which pre-dated Marinello itself -- how an element of an accessorial offense that requires proof of merely a purpose to interfere with an investigation in and of itself could suffice to make an offense one "relating to obstruction of justice," given Valenzuela Gallardo III's Marinello-based rationale for expressly holding that Congress must be understood to have intended the actus reus of an offense "relating to obstruction of justice" to require proof of a nexus between the obstructive conduct and a reasonably foreseeable investigation or proceeding. I thus also see no basis for concluding from Valenzuela Gallardo III's discussion of Espinoza that Valenzuela Gallardo III's Marinello-informed, actus reus-based definition of the nexus requirement is not the operative one. Nor does the government suggest otherwise, given that it describes the BIA's operative understanding of the elements of the

- 53 -

**B.**

There is one hanging thread. The majority asserts that it is wrong to read the BIA as "requir[ing] an identical nexus in both the statute at issue [in Marinello], 26 U.S.C. § 7212, and the statute at issue here, § 1101(a)(43)(S)." Maj. Op. at 32.

In support of this assertion, the majority first points to a statement by the BIA in Valenzuela Gallardo III in which it supposedly "expressly rejected that false equivalence." Id. The statement from Valenzuela Gallardo III that the majority has in mind is the one in which the BIA observes that Congress intended § 1101(a)(43)(S) "to apply more broadly than" 26 U.S.C. § 7212 and 18 U.S.C. § 1503, the section of Chapter 73 that defines the "catch-all" "obstruction of justice" offense. Maj. Op. at 32 (quoting Valenzuela Gallardo III, 27 I. & N. Dec. at 454 n.6).

But, a closer examination of the BIA's decision reveals that the purported "express[] reject[ion]" that statement makes has nothing to do with the scope of the nexus requirement for "an offense relating to obstruction of justice" under § 1101(a)(43)(S). Read in context, the footnoted statement aims only to make the simple point that the generic, federal "obstruction of justice"-related offense that Congress there referred to encompasses crimes other than the two specific federal

actus reus of the "obstruction of justice"-related offense referred to it § 1101(a)(43)(S) just as I do.

- 54 -

offenses set forth respectively in 18 U.S.C. § 1503 and 26 U.S.C. § 7212 -- as it plainly does. See Valenzuela Gallardo III, 27 I. & N. Dec. at 454 & n.6. The footnoted statement thus clarifies that § 1101(a)(43)(S) is referring to a crime that encompasses even, for example, state-law crimes that criminalize the same swath of conduct as the generic, federal "obstruction of justice" offense to which § 1101(a)(43)(S) refers.

In performing that clarifying function, the footnoted statement in no way purports to be defining anew the scope of the nexus requirement for the generic, federal "obstruction of justice"-related offense or the meaning of the "reasonably foreseeable" standard that constrains the nexus requirement of that offense's actus reus. The BIA in the main body of its opinion relied heavily on Marinello, as I have described, and then expressly cited Marinello and United States v. Aguilar, 515 U.S. 593 (1995), which construed the nexus requirement in § 1503, see id. at 599-600, when it set forth the elements of "an offense relating to obstruction of justice," see Valenzuela Gallardo III, 27 I. & N. Dec. at 456. It would be strange for the BIA to then redefine a portion of those elements in a footnote without addressing why.

The majority also points to a BIA case decided after Valenzuela Gallardo III that, the majority contends, demonstrates that the BIA did not intend to rely on Marinello to define the

- 55 -

actus reus of "an offense relating to obstruction of justice." Maj. Op. at 33-34 (discussing Matter of Cordero-Garcia, 27 I. & N. Dec. 652 (BIA 2019)). But, the BIA there did not purport to reject its earlier clear statement of the actus reus of the offense as being subject to a "reasonably foreseeable" standard. Nor do I read the BIA in Cordero-Garcia to have suggested that the "reasonably foreseeable" standard that constrains the actus reus of "an offense relating to obstruction of justice" is not itself constrained by the "in the offing" gloss that Marinello placed on it. Rather, I read Cordero-Garcia to have accepted Valenzuela Gallardo III's description of the actus reus of that offense as being subject to such a "reasonably foreseeable"-constrained -- and Marinello-informed -- nexus requirement and then to have concluded that, even still, the state law offense at issue there qualified as "an offense relating to obstruction of justice" under § 1101(a)(43)(S). See Cordero-Garcia, 27 I. & N. Dec. at 654 (relying on the "specific intent" element of a California criminal offense to find that the offense was a categorical match to the generic, federal offense set out in § 1101(a)(43)(S)).

In other words, I read Cordero-Garcia to be no different from Valenzuela Gallardo III or the BIA decision in Silva's case. It, too, embraces an understanding of the actus reus of "an offense relating to obstruction of justice" that is nexus-based and constrained by the reasonably foreseeable standard that Marinello

- 56 -

sets forth. And, it, too, does so notwithstanding that it concludes that a state-law accessorial offense is such an "obstruction of justice"-related offense even though that state-law accessorial offense has no similarly constrained actus reus. I also emphasize that, in concluding that the BIA has not yet backed away from Valenzuela Gallardo III's quite clear description of the offense's actus reus, I am taking a position that the government itself appears to share, given the way that the government's briefing to us describes the understanding of actus reus of the offense that the BIA embraced in Valenzuela Gallardo III and re-embraced yet again in the case before us.

### III.

With the BIA's operative understanding of the nexus requirement for "an offense relating to obstruction of justice" now in view, I am almost ready to address whether Silva's offense of conviction is such an offense. But, before taking up that question -- which, as I will explain, is the dispositive one in this case -- there remains one more task to complete. It concerns the majority's independent, Chevron-free holding that I mentioned at the outset.

In that holding, the majority appears to conclude that, insofar as we are not bound to defer under Chevron to the BIA's nexus-based construction of the offense referred to in § 1101(a)(43)(S), that offense may reasonably be construed under

- 57 -

the interpretive approach set forth in Esquivel-Quintana not to be subject to a nexus requirement at all. And, the majority then appears to go on to conclude in that holding that Silva's petition must be rejected for this reason, too.

But, notably, the majority does not explain in so holding what basis there is for not applying Chevron here. It does not suggest, for example, that the BIA's nexus-based construction of the "obstruction of justice"-related offense referred to in § 1101(a)(43)(S) is an unreasonable one, such that the BIA's construction would not be entitled to deference for that reason. In fact, the majority holds the opposite.

Nor does the majority suggest that Chevron deference is not available to the interpretive question at hand, even if the BIA's construction is a reasonable one. Rather, the majority rejects each of Silva's arguments to that effect as well as those of the amici and even explains why our precedents leave us, as a panel, with no basis for rejecting Chevron's application to the extent that the BIA's nexus-based construction is a reasonable one.[28]

_____

[28] I note in this regard that I agree with the majority that there is no basis for this panel to hold that Chevron has no application at all, given that we have three times before upheld BIA constructions of other provisions of this same part of the INA under Chevron. See De Lima v. Sessions, 867 F.3d 260, 264-65 (1st Cir. 2017); Soto-Hernandez v. Holder, 729 F.3d 1, 3-5 (1st Cir. 2013); Lecky v. Holder, 723 F.3d 1, 5 (1st Cir. 2013). I also

- 58 -

There is, though, still one more problem with holding that Silva's petition must be rejected under Esquivel-Quintana based on a nexus-less construction of the "obstruction of justice"-related offense referred to in § 1101(a)(43)(S). And, that problem stems from the fact that the majority does not explain at any point how, insofar as Chevron somehow does not apply here, the Esquivel-Quintana factors favor the adoption of a nexus-less construction of that offense to the exclusion of the nexus-based one that the BIA describes.

The majority does, in applying those factors, advance reasons to reject the strict, pending-investigation-or-proceeding nexus requirement that the Third and Ninth Circuits have adopted.[29]

_____

emphasize, as the majority does as well, that the BIA here is not construing a provision of the federal criminal code. It is construing a provision of the INA that determines the type of predicate offense that makes a lawful permanent resident removable and disqualifies a noncitizen from being eligible for asylum.

[29] I note in this regard that the majority invokes a series of dictionary definitions to support its contention that the Third and Ninth Circuits are wrong to hold that "an offense relating to obstruction of justice" requires proof of a nexus between obstructive conduct and an investigation or proceeding that, at the time of that conduct, is at least pending. But, even if those definitions support that conclusion, they do not themselves support a no-nexus understanding of the actus reus of "an offense relating to obstruction of justice." And, in fact, the majority does not attempt to explain how those definitions do. Nor, I should add, do any of the provisions in Chapter 73 to which the majority refers provide support for a non-nexus understanding, as one of the two that the BIA might be read to suggest does so is 18 U.S.C. § 1512 itself while the other one is expressly restricted to conduct committed "with the intent to facilitate an illegal gambling business," 18 U.S.C. § 1511(a) (1996).

And, I suppose, the majority could be understood in doing so also to be offering reasons that could explain why such a nexus-less construction is itself a permissible one.  I suppose as well that,

---

The majority does identify some state law criminal codes that have grouped disparate offenses, some of which lack a nexus requirement, within a chapter or section and given the entire assortment the label of "obstruction of justice" or something similar.  But, the majority understandably does not go on to suggest on that basis that § 1101(a)(43)(S) is better read -- let alone best read even if the BIA reads the relevant materials otherwise -- to be referring to a nexus-less "obstruction of justice" offense.  Cf. Jerome v. United States, 318 U.S. 101, 104 (1943) ("[W]e must generally assume, in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law.").

The majority also points to the fact that the Model Penal Code identifies an accessory after the fact offense as "an independent offense of obstruction of justice."  Maj. Op. at 26 (quoting Model Penal Code § 242.1 explanatory note (Am. L. Inst. 1985) [hereinafter MPC]).  But, the majority does not hold that the only reasonable construction of § 1101(a)(43)(S) is one that tracks that understanding.  That may be because the Model Penal Code did not even contain an offense labeled "obstruction of justice" at the time that § 1101(a)(43)(S) was enacted, see MPC §§ 242.1-.8, and because the Model Penal Code itself acknowledges that, under the "traditional concept" of "common law . . . accessory after the fact," a crime of that type was not "an independent offense of obstruction of justice," id. § 242.1 explanatory note.  Thus, here, too, the majority fails to offer a basis for favoring a nexus-less construction over the BIA's nexus-based one.

Finally, although the majority relies on some precedent to assert that the federal accessory-after-the-fact statute, 18 U.S.C. § 3, has a "gist" of "essentially . . . obstructing justice," Maj. Op. at 18, it does not explain why one may conclude from that precedent alone that such a nexus-less construction is to be preferred to the BIA's nexus-based construction of the actus reus of "an offense relating to obstruction of justice."  I also note in that regard that Congress itself saw fit to put that accessory-after-the-fact statute in a chapter other than Chapter 73, which is the only chapter on which Congress chose to bestow the title, "Obstruction of Justice."

if we are not permitted to afford Chevron deference to the BIA's nexus-based construction despite its reasonableness, then we must adopt the nexus-less construction if it is superior to the BIA's. See H.J. Friendly, Chenery Revisited: Reflections on Reversal and Remand of Administrative Orders, 1969 Duke L.J. 199, 210.

But, in light of Chenery, to justify the rejection of Silva's petition based on a nexus-less construction of the "obstruction of justice"-related offense referred to in § 1101(a)(43)(S), the majority must do more than explain merely why that nexus-less construction is as permissible as the nexus-based one that the BIA describes. For, without a reason to conclude that the nexus-less construction is superior, there is no reason to conclude that the nexus-based construction that the BIA has adopted and that it relied on in Silva's case is not a permissible one for it to have applied. Yet, the majority at no point explains why (nor, for that matter, does the government) the nexus-less rather than the nexus-based construction is the one that the BIA would be bound to apply insofar as Chevron is not applicable.

Thus, because I see no basis under Chenery for attributing to the BIA the nexus-less understanding of § 1101(a)(43)(S) to which the majority adverts, I also see no basis for denying Silva's petition for review based on that understanding. And so, unless the BIA's own understanding of the

nexus requirement for the "obstruction of justice"-related offense to which that provision refers encompasses the accessorial offense that Silva was convicted of under Massachusetts law, his petition must be granted. All of which is to say that -- at last -- I can now move on to an assessment of the portion of the majority's opinion in which it holds pursuant to the BIA's nexus-based construction of the "obstruction of justice"-related offense referred to in § 1101(a)(43)(S) that Silva's conviction for being an accessory after the fact under Massachusetts law is an offense of that kind.

**IV.**

The majority draws in this portion of its opinion on the approach -- commonly referred to as the "categorical approach" -- that the Court relied on in <u>Moncrieffe</u> to construe § 1101(a)(43). <u>See</u> 569 U.S. at 190-91. Under that approach, the critical question is whether a comparison of the elements of the generic, federal "obstruction of justice"-related offense referred to in § 1101(a)(43)(S) and the elements of the state-law accessorial offense of which Silva was convicted reveals that the least of the conduct criminalized by that accessorial offense is encompassed by the generic, federal offense. For, under the categorical approach, unless that comparison does reveal such a match arising from the elements of the two offenses, Silva's accessorial offense of conviction is not "an offense relating to obstruction of justice."

I have explained how the BIA defines the elements of the "offense relating to obstruction of justice" to which § 1101(a)(43)(S) refers. There remains to address, then, only whether that offense -- so understood -- encompasses the least of the conduct encompassed by the elements of the Massachusetts accessory-after-the-fact offense of which Silva was convicted.

That accessorial offense contains the following four elements: that the defendant (1) "harbors, conceals, maintains, or assists the principal felon or accessory before the fact, or gives such offender any other aid," (2) does so "after the commission of a felony," (3) does so "knowing that [the person being assisted] has committed a felony or has been accessory thereto before the fact," and (4) does so with the specific intent that the defendant "avoid or escape arrest, detention, trial, or punishment." Mass. Gen. Laws ch. 274, § 4; see also Commonwealth v. Watson, 165 N.E.3d 1015, 1025 (Mass. 2021); Commonwealth v. Iacoviello, 58 N.E.3d 1032, 1047 (Mass. App. Ct. 2016); Commonwealth v. Clipp, No. 10-0296, 2011 WL 5182244, at *2 (Mass. Super. Ct. Aug. 26, 2011). None of the elements purports on its face to require that an official judicial proceeding or investigation be reasonably foreseeable -- let alone pending -- at the time of the alleged accessorial conduct by the defendant. Nor, as I will next explain, may any of them be read impliedly to so require.

## A.

The first element (though I suppose it could be understood to be a compendium of elements in its own right) defines part of the actus reus of the offense. It provides that the government must prove that the defendant engaged in conduct that could qualify as obstructive conduct of the kind that § 1101(a)(43)(S) encompasses.

But, nothing in the element requires there to be proof of a linkage of any kind between that conduct and an official investigation or proceeding into any crime. Thus, this element cannot ensure the required categorical match between the two offenses. Nor does the BIA -- or, for that matter, the majority -- suggest otherwise.

## B.

The second element requires proof that the recipient of the defendant's aid committed a felony or was an accessory before the fact to that felony. This element also defines part of the actus reus of the offense. But, it requires no more of a showing than that the defendant lent the requisite type of aid to the recipient of it after that recipient had in fact committed a felony or been an accessory before the fact to it. Thus, it would appear that, just like the first element, this element also does not on its face require proof of what the BIA by its own account understands the generic, federal "obstruction of justice"-related

offense to demand: proof that an official investigation is reasonably foreseeable at the time of the obstructive conduct and thus that there is a nexus of at least that sort between the defendant's obstructive conduct and an official investigation.

In addition, the accessorial offense cannot be understood to be impliedly subject to a "reasonably foreseeable"-based nexus requirement as an element, because it applies to being an accessory after the fact to Massachusetts felonies that are in their nature no more likely to be detected than the offense at issue in Marinello. See, e.g., Mass. Gen. Laws ch. 62C, § 73(a)-(b), (f) (defining several tax-related felonies, such as the willful evasion of or "failure to collect or truthfully account" for a tax); id. ch. 266, § 67C (making it a felony to knowingly and willfully make a false entry in a book or record of a public contract); id. § 111C (making certain variations of insurance fraud a felony); id. ch. 267, § 8 (making it a felony to counterfeit certain bank bills); id. ch. 267A, § 2 (making it a felony to launder any amount of money or property); id. ch. 271, § 49(a) (making it a felony to charge more than twenty percent annual interest on a loan). See generally id. ch. 274, § 1 (defining felonies to include any crime punishable by "imprisonment in the state prison"). Indeed, one of the tax-related felonies in Mass. Gen. Laws ch. 62C, § 73, such as willfully evading a tax or concealing goods on which a tax is to be imposed, seems to me to

be the same as the offense at issue in Marinello, as there is no reason to presume from the fact that such an offense has been committed more than that authorities "may eventually catch on" to the commission of that offense.

The only potential complication that I can see with this conclusion is that the underlying "felony" in Silva's case is murder, which as a general matter is a crime more likely to trigger an investigation upon its occurrence than a tax offense. But, Silva asserts, without dispute from the government or the expression of any contrary view by the BIA, that the Massachusetts accessory-after-the-fact statute is not divisible. Nor did the BIA suggest here that Silva's offense of conviction qualifies as "an offense relating to obstruction of justice" because of the nature of the predicate felony that the principal committed.

## C.

The third element does require proof that the defendant accused of the accessorial conduct lent aid to the one who committed the felony or was an accessory before the fact to it "knowing that [the person being assisted] ha[d] committed a felony or has been accessory thereto before the fact." Mass. Gen. Laws ch. 274, § 4. But, proof of such knowledge -- which is all that this element requires -- cannot demonstrate the kind of nexus that the BIA's Marinello-based "in the offing" standard requires between obstructive conduct and an investigation: that an

investigation into that felony was in fact reasonably foreseeable at the time of the accessorial conduct. Nor did the BIA suggest that, given the principal's predicate crime in Silva's case, proof of such a nexus was necessarily required to convict Silva of this accessorial crime.

## D.

That leaves the fourth element, which requires proof that the defendant engaged in the alleged accessorial conduct "with intent that [the principal or accessory before the fact] shall avoid or escape detention, arrest, trial or punishment," Mass. Gen. Laws ch. 274, § 4. The majority rightly notes that "[a]bsent an investigation, there can be no prosecution and no detention, arrest, trial, or punishment to avoid or escape." Maj. Op. at 28. But, this element does not require proof that detention, arrest, trial or punishment is reasonably foreseeable. Rather, it is a classic mens rea element that does not concern the actus reus at all.

Nor does the element require proof -- as a means of proving the defendant's mental state -- that an investigation was in fact in the offing (or, for that matter, was even reasonably foreseeable under any understanding of that constraint). The element requires proof merely that the defendant lent certain kinds of aid to the one who committed a felony or was an accessory before the fact to that felony with the intent to help that recipient

evade arrest, trial, punishment, or detention. See Watson, 165 N.E.3d at 1025.

In fact, it appears that under this Massachusetts offense the defendant need not even have been shown to have reasonably but mistakenly believed that an official investigation was in the offing when he lent such aid. It instead appears that he need only be shown to have subjectively believed -- even if unreasonably -- that such an investigation was in the offing when he did so. Cf. Commonwealth v. Liebenow, 20 N.E.3d 242, 250 (Mass. 2014) (holding that a defendant's honest but unreasonable belief that property was abandoned was sufficient to establish a defense that turned on that honest belief); Commonwealth v. Lahens, 177 N.E.3d 935, 942 (Mass. App. Ct. 2021) ("Specific intent crimes are commonly identified by the presence of a subjective intent to cause a result that is separate from the crime's actus reus." (citing 1 W.R. LaFave, Substantive Criminal Law § 5.2(e) (3d ed. 2018))); Commonwealth v. Cachopa, No. 09-P-2337, 2014 WL 5461490, at *2 (Mass. App. Ct. Oct. 29, 2014) (inquiring into the defendant's state of mind to determine if evidence was sufficient to support a conviction under the accessory after the fact statute); Clipp, 2011 WL 5182244, at *2 (same for an indictment).

Proof of no more than that the defendant held a belief (and not necessarily even an objectively reasonable one) about the investigation being reasonably foreseeable as of the time of his

accessorial conduct is not proof of the investigation being reasonably foreseeable in fact as of that time. As such, proof of that sort is not proof of what the BIA -- and thus the majority -- agrees the generic, federal offense in § 1101(a)(43)(S) requires. See Uppal v. Holder, 605 F.3d 712, 718 (9th Cir. 2010) (finding a Canadian criminal offense not to be a categorical match to a crime involving moral turpitude because the Canadian statute "require[d] only that the risk of harm resulting from the assault be 'objective[ly] fores[eeable],'" while the relevant crime of moral turpitude required "subjective knowledge of a factor indicating risk to another").

To be sure, in finding here that the Massachusetts accessorial offense at issue is a categorical match for the generic, federal offense referred to in § 1101(a)(43)(S), the BIA does rely on this fourth element and does state that "[t]here would be little reason for a defendant to be an accessory after the fact in this manner unless an investigation or proceedings [sic] was reasonably foreseeable" (internal quotation marks omitted).[30] But, the BIA ignores the obvious point that a defendant can have an intention to lend aid for such a purpose without there being any proof that, in fact, the purpose could be accomplished. Cf. United

---

[30] The Fourth Circuit also rested its decision on a similar specific intent element in interpreting a Virginia statute. Pugin, 19 F.4th at 454.

States v. Zhen Zhou Wu, 711 F.3d 1, 18 (1st Cir. 2013) ("[E]ven where the evidence is sufficient to show the necessary mens rea, the government still must always 'meet its burden of proving the actus reus of the offense.'" (quoting United States v. Whiteside, 285 F.3d 1345, 1353 (11th Cir. 2002))).

One need only consider the case in which the felon tells the accessory that he, the felon, is sure to be arrested as a means of inducing the accessory to lend assistance. If, in fact, there is no evidence to show that it was reasonably foreseeable at the time the assistance was provided by the accessory that authorities would investigate the felon's unlawful conduct -- and there was instead at most evidence at that time that authorities "may" do so "eventually" -- the BIA's own articulated standard for proving the nexus would not be met even though the specific intent requirement of the Massachusetts accessory-after-the-fact offense would be satisfied. Cf., e.g., United States v. De Leon, 270 F.3d 90, 92 (1st Cir. 2001) (recognizing that an offense "is a specific intent crime" because it "requires a subjective intent" to achieve a specific end); Cachopa, 2014 WL 5461490, at *2; Clipp, 2011 WL 5182244, at *2.

**E.**

In sum, careful attention to the elements of the Massachusetts accessorial offense of which Silva was convicted and the elements of the generic, federal "obstruction of justice"-

related offense referred to in § 1101(a)(43)(S) -- as described by the BIA -- shows that the two offenses (so understood) are not a categorical match. And that is so, even if the generic, federal offense requires no more of a nexus between the defendant's obstructive conduct and an investigation or proceeding than the BIA has determined that offense to require, given both the Marinello-informed "in the offing" gloss on the "reasonably foreseeable" standard that the BIA holds defines that offense's nexus requirement and the fact that this nexus requirement constrains the actus reus of that offense. Thus, there is no basis for us to uphold the BIA's conclusion that Silva's offense of conviction is a categorical match for it.[31]

## V.

The majority contends that I am mistaken in reaching this conclusion. It does so in part by emphasizing that in applying the categorical approach we may not imagine "fanciful, hypothetical scenarios." United States v. Fish, 758 F.3d 1, 6 (1st Cir. 2014) (citing Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)); see also United States v. Starks, 861 F.3d 306, 315 (1st Cir. 2017). The majority points in this regard to the absence of any reported cases in Massachusetts of prosecutions for the

---

[31] The "relating to" words in § 1101(a)(43)(S) still retain a function: they pick up inchoate versions of an offense that is for "obstruction of justice."

accessory after the fact offense that is at issue in circumstances in which the defendant's obstructive conduct did not have a nexus to a reasonably foreseeable investigation or proceeding.

But, the categorical approach has never been understood to make the test of a state law's legally operative scope wholly dependent on the presence of reported cases of actual prosecutions for such conduct, in part because reported cases may not be representative of charging practices. Da Graca v. Garland, 23 F.4th 106, 113-14 (1st Cir. 2022); Swaby v. Yates, 847 F.3d 62, 65-66 (1st Cir. 2017) (noting that the Duenas-Alvarez limitation "has no relevance" to a case where the text of a state law clearly prohibited certain conduct but the petitioner "had failed to show that there was a realistic probability that [the state] would actually prosecute offenses" derived from that conduct). Nor would such a test make sense.

The outcome under the categorical approach depends on what the statute setting forth the offense at issue is fairly read to require the government to prove. It does not depend on how aggressively prosecutors choose to enforce that offense or the actual conduct of defendants in committing it. See Swaby, 847 F.3d at 65-66.[32]

---

[32] For this reason, the majority's point that "Silva's plea leaves no doubt that he intended to obstruct a reasonably foreseeable investigation," Maj. Op. at 5 n.2, is irrelevant to

I agree that we may not stretch the text of a criminal statute to cover conduct that we have no good reason to conclude that the statute in fact reaches. But, we must construe such a statute to reach the conduct that its text plainly does reach. And, that is so regardless of whether any case involving such conduct has been prosecuted and then resulted in a published opinion. See United States v. Burghardt, 939 F.3d 397, 409 (1st Cir. 2019) (reaffirming that we should "avoid treating the state offense as if it is narrower than it plainly is." (internal quotation marks and alterations omitted) (quoting Swaby, 847 F.3d at 66)).

Thus, what matters here is what is clear from the text of the state-law statute that sets forth the accessorial offense at issue. And, what is clear from that text is both that the offense may be committed under Massachusetts law with respect to tax evasion and that the state may prove the commission of that accessorial offense in relation to that type of felony without proving that any investigation into that felony was "in the

_____

this case. The categorical approach demands that "we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding aggravated felony." Moncrieffe, 569 U.S. at 190 (quoting Duenas-Alvarez, 549 U.S. at 186). A defendant's plea in an individual case cannot define the elements of a state law offense to be other than what the statutory text that sets forth that offense -- and the state's highest court's interpretation of it -- defines those elements to be.

- 73 -

offing." Thus, it is clear that there is no requirement to prove a nexus of the "in the offing"-constrained sort that the BIA has determined must be proved as part of the actus reus of an "offense relating to obstruction of justice."

The majority does attempt to respond to this line of argument. It does so by asserting that the state law accessorial offense at issue here is a categorical match for the "obstruction of justice"-related offense referred to in § 1101(a)(43)(S) only so long as the underlying "felony" for that accessorial offense is one that the majority understands to be a "serious" felony. The majority then goes on to hold that the accessorial offense of which Silva was convicted is such a categorical match precisely because Silva was convicted of being an accessory after the fact to such a "serious" felony -- namely, murder.

But, no party to the case or the BIA has indicated that the accessorial offense at issue either is divisible or is indivisible but, contrary to its plain text, has an implicit "seriousness" limitation that makes it just fine to be an accessory after the fact to a tax crime. Nor is the accessorial offense in Silva's case one for which the BIA's "reasonably foreseeable"-based nexus had to be proved as part of its actus reus. I thus do not understand how the basis on which the majority purports to be explaining away Marinello's significance to this case -- which, I note, is not the bass on which the BIA itself relied -- comports

with the categorical approach to which the majority purports to be faithful.

I would add only in this connection that the "traditional concept" of accessory after the fact offenses is that "the accessory's liability derives from that of his principal." Model Penal Code § 242.3 (Am. L. Inst. 1985); see also 5 Tucker's Blackstone *35 (defining an accessory as "he who is not the chief actor in the offense . . . but is someway concerned therein"). For that reason, there was no need at common law to require proof for such a crime that the aid to the felon that the accessory provided in fact interfered with an investigation that was "in the offing." It was enough to require proof that the accessory shared some culpability for the principal's crime, which could be proved through evidence of his culpable mental state at the time that he lent the aid.

By contrast, offenses of the kind that Blackstone labeled as ones against "public justice" -- which are the kinds of offenses that we now usually call "obstruction of justice" offenses, see Maldonado v. Commonwealth, 829 S.E.2d 570, 575 (Va. Ct. App. 2019) (looking to Blackstone's list of offenses against public justice to determine the meaning of obstruction of justice at common law); People v. Jenkins, 624 N.W.2d 457, 465 (Mich. Ct. App. 2000) (same) -- were different. The criminal liability of the one who committed the offense against public justice was

understood to be derived from his conduct as a principal in his own right based on his having done something criminal in and of itself -- impeding the administration of justice. See, e.g., 5 Tucker's Blackstone *127-41; Wharton's Criminal Law §§ 562, 570 (15th ed. 1996).

As a result, it is not "fanciful" to conclude that Silva's offense of conviction requires no proof of the kind of nexus between obstructive conduct and an investigation or proceeding that the majority and the BIA acknowledge Congress did require for the generic, federal "obstruction of justice"-related offense referred to in § 1101(a)(43)(S). Rather, such a construction of Silva's offense of conviction merely results in that offense being different from an "obstruction of justice" offense in a way that even Blackstone would recognize. 5 Tucker's Blackstone *37-39, *127-41 (treating those types of offenses separately in distinct chapters of his treatise).

The majority separately takes issue with my invocation of Marinello, to the extent that I take the view that the BIA relied on Marinello's understanding of the "reasonably foreseeable" standard to define the required nexus for an "offense relating to obstruction of justice" under § 1101(a)(43)(S). The majority focuses in doing so on the fact -- which I do not dispute -- that the Court there did not have occasion to decide whether the evidence in that specific case could suffice to satisfy the

"in the offing"-based nexus requirement that the Court there described.

But, as I have already explained, proof of the commission of a predicate crime -- or the awareness of its commission by the one guilty of the accessorial offense -- is not proof that an investigation into that predicate crime was in fact reasonably foreseeable at the time of the accessorial conduct in the "in the offing" sense. It is at most proof that authorities "may" (or of the defendant's knowledge that the authorities may) "eventually" catch on to that predicate crime's commission. But, that is exactly the sort of proof that Marinello clearly deemed inadequate to satisfy the "reasonably foreseeable" standard that the Court described in that case.

Thus, because the state law accessorial offense of which Silva was convicted requires, as to its actus reus, no more than proof of the defendant's mere awareness of the predicate crime's commission -- which, as best I can tell, is also a point that the majority does not dispute -- that state law accessorial offense cannot be a categorical match for the "obstruction of justice"-related offense set forth in § 1101(a)(43)(S) as the BIA has described that offense's elements. For, while the BIA does point to the specific intent element of the Massachusetts accessory-after-the-fact offense in concluding otherwise, the majority overlooks the way that the BIA itself defines the actus reus of an

"offense relating to obstruction of justice" and so mixes up actus reus and mens rea elements in a way that the elements-based categorical approach simply does not permit.

## VI.

I have explained before why I do not agree with the criticism that the categorical approach permits technical inquiries to yield the conclusion that objectively concerning criminal conduct is of no concern to the Congress that enacted the measure that imposes the special, adverse consequence at issue. See United States v. Faust, 853 F.3d 39, 61-66 (1st Cir. 2017) (Barron, J., concurring). But, the objection that such a technical, elements-based inquiry misses the forest for the trees is especially misplaced here, given the history that I have just recounted about how accessorial offenses historically were understood to be conceptually distinct from offenses for impeding the administration of public justice. And, indeed, the organization of modern criminal codes still reflects such an understanding of those two types of offenses being distinct. See, e.g., 18 U.S.C. § 3, ch. 73; Mass. Gen. Laws ch. 268, ch. 274, § 4; cf. Da Graca, 23 F.4th at 112 (determining the scope of a state criminal statute in part by looking to certain of the state's other criminal statutes, and approvingly noting that the BIA "interpreted the existence of a separate California joyriding statute to cabin the breadth of the California unauthorized use

[of a motor vehicle] statute").  Thus, if history is our guide, there is quite good reason to think that the Congress that singled out offenses "relating to obstruction of justice" -- even accepting as the majority does that the BIA is right in how expansively it has defined that category of offenses -- was not a Congress that had in view the kind of accessorial crime of which Silva was convicted.

I do not mean to suggest that anything would prevent a state from defining the elements of an offense that it labels as an accessorial one in a way that would make that offense a match for "an offense relating to obstruction of justice," as the BIA understands that offense.  But, as I have explained, there is no indication that Massachusetts has done so here.

Accordingly, I conclude that although Silva was convicted of being an accessory after the fact to a felony, neither the BIA nor the majority has established that he has been convicted of an "offense relating to obstruction of justice," such that he may be deemed to have committed an "aggravated felony" within the meaning of the INA.  I therefore would grant Silva's petition for review and so, respectfully, dissent.